**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 0:26-cr-025-LMP-DLM |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **RESPONSE TO** |
| v. | ) | **DEFENDANT FORT'S** |
| | ) | **MOTION FOR IMMEDIATE** |
| NEKIMA VALDEZ LEVY | ) | **DISCLOSURE OF GRAND** |
| ARMSTRONG, et al., | ) | **JURY PROCEEDINGS &** |
| | ) | **DEFENDANT'S LEMON'S** |
| Defendants. | ) | **JOINDER** |
| | ) | |
| | ) | |

## INTRODUCTION

Defendants Georgia Fort and Don Lemon seek an order compelling disclosure of grand jury materials or for an *in camera* review of grand jury proceedings. (Dkts. 528, 536.) Defendant Fort further seeks to require the Government to publicly "correct" the record, and hold a hearing regarding alleged *Brady, Napue*, grand jury, and prosecutorial misconduct issues. Defendant Lemon again seeks disclosure of grand jury materials, based on previous motions (Dkts. 125, 413, 525, 529) and the fact that the Government's recent application for disclosure of a victim-witness's testimony justifies the disclosure of all grand jury transcripts. (Dkt. 536.)

The primary focus of Fort's complaint concerns a statement contained in an unsworn search warrant application alleging that Fort engaged in

chanting while inside Cities Church and used her camera as a "weapon" to her during the January 18, 2026 incident. (Dkt. 528.) The statement about Fort chanting was incorrect, but the error was due to simple inadvertence. The characterization of the camera as a weapon, though not ideal editing, is immaterial. Although the Government regrets any error and does its best to avoid them, mistakes are inevitable. When they occur, the Government discloses and fixes them in accordance with Department policy and the Court's justifiably high expectations.

For the reasons set forth herein, both motions should be denied. In connection herewith, however, the Government intends to make an *in camera* submission for the Court's consideration of Fort's motion.

## STATEMENT OF FACTS

### A. The Complaint Does Not Allege That Either Fort or Lemon Engaged in Chanting

The complaint on file publicly in this case is still redacted. However, based on careful review and word searches for "chant" and "chanting," it appears that the complaint contains no allegation accusing either defendant FORT or defendant LEMON of engaging in chanting inside Cities Church on January 18, 2026. (*See* Dkt. 23; *see also United States v. Armstrong, et al.*, No. 0:26-mj-00040-LMP-DLM, Dkt. 23.)

**B.      The Original Indictment Does Not Allege That Either Fort or Lemon Engaged in Chanting**

In late January 2026, a federal grand jury issued an indictment against the first nine defendants.  (Dkt. 39.)  The Indictment charged all nine defendants with the same two charges: (1) Conspiracy Against Federally Secured Rights, in violation of 18 U.S.C. § 241; and (2) Interference with the Free Exercise of Religion at a Place of Religious Worship, in violation of 18 U.S.C. § 248(a)(2).  (*Id.*)

In Count One, the Government alleged two overt acts referring to "chanting" inside Cities Church on the date in question, January 18, 2026.  In Overt Act #14, the Indictment alleges the following:

> While inside the Church, defendants ARMSTRONG, ALLEN, KELLY, RICHARDSON, LUNDY, CREWS, and AUSTIN and others led and/or joined with their co-conspirators in various chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back!," while gesturing in  an  aggressive and hostile manner, which congregants and the pastor perceived as threats of violence and a potential prelude to a mass shooting.

(*See* Dkt. 39 at 8.)  ***Notably absent from this list*** of "chanting" defendants is the two defendants who have filed the subject motions: FORT and LEMON.  (*Id.*)

In Overt Act #15, the Indictment alleges again that "some" defendants engaged in "chanting" while at Cities Church:

3

> While inside the Church, defendants ARMSTRONG, ALLEN, KELLY, LEMON, RICHARDSON,  LUNDY, CREWS, FORT, and AUSTIN oppressed, threatened, and intimidated the Church's congregants and pastors by physically occupying most of the main aisle and rows of chairs near the front of the Church, engaging in menacing and threatening behavior, **(for some) chanting and yelling loudly at the pastor and congregants**, and/or physically obstructing them as they attempted to exit and/or move about within the Church.

(*See* Dkt. 39 at 8-9.)  Here, again, however, the ***Indictment does not allege that either FORT or LEMON engaged in "chanting" at the Church***, just that "some" of the original nine defendants did so.  (*Id.*)

Thus, with the original Indictment, the Government never asked the grand jury to make a finding that either FORT or LEMON engaged in chanting along with their co-defendants at Cities Church.  The Indictment thus contains no such allegation against either of them.

## C.   The Superseding Indictment Does Not Allege That Either Fort or Lemon Engaged in Chanting

In February 2026, the grand jury issued a Superseding Indictment charging an additional 30 defendants with the same two offenses.  (Dkt. 144.) In Count One of the Superseding Indictment, Overt Act #25 alleges the following that various defendants engaged in chanting while inside Cities Church on January 18, 2026, but that lengthy list ***does not include*** either defendant FORT or defendant LEMON.

4

Overt Act #25 alleges the following:

> While inside the Church, defendants ABOUD, ADAMSON, ALLEN, ARMSTRONG, AUSTIN, BEUTE, BLUMENFELD, CAREY, CREWS, DOTY, DUNLAP, EDWARDS, GOLIGOSKI, HANSA, HAUPTMAN, HOGAN, KELLY, LEWIS, LUNDY, MATTHIAS, C. MICHAELSON, E. MICHAELSON, PINEDA, PERRY, PERSIGEHL, RICHARDSON, SHAW, STRONG, C. SWENSON, R. SWENSON, TIER, TUGGLE, VERGIN, and others, led and/or joined, with their co-conspirators in various chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back!," while gesturing in an aggressive and hostile manner, which congregants and the pastor perceived as threats of violence and a potential prelude to a mass shooting.

(*See* Dkt. 144 at 12.)

In Overt Act #26, the Superseding Indictment basically tracks the allegation in Overt Act #15 of the original Indictment, except that it opts to forgo the long list of defendants at the start of the sentence. (*See* Dkt. 144 at 12-13.) In relevant part, though, it ***alleges only that "some" defendants*** engaged in "chanting" while at Cities Church. (*Id.*)

Thus, as with the original Indictment, the Superseding Indictment ***does not allege*** that either defendant FORT or defendant LEMON engaged in chanting while inside Cities Church on January 18, 2026.

### D.    Pending Motions for Disclosure of Grand Jury Proceedings

On February 13, 2026, defendants FORT, LEMON, and BOLLMAN moved for disclosure of the grand jury transcripts based on public statements of an elected official and high-ranking DOJ personnel.  (Dkts. 125 ("Lemon Mot.") at 15, 17; Dkt. 441.)  The Government filed its opposition (Dkt. 479) to both such motions, which are pending before the Court.

In another motion, thirty-four additional defendants also moved for disclosure of the grand jury proceedings.  (Dkt. 491; Dkt. 494 (joinder).)  That motion relies on speculative arguments that the Government may have misadvised the grand jury about the applicable law, spiced up with more speculation that the Government may have used inflammatory rhetoric while presenting the indictments.  The Government has opposed that motion, too.

### E.    Fort's New Motion for Disclosure of Grand Jury Proceedings

Some weeks ago, the Court issued an OSC to determine whether the Government objected to the Court's disclosure of certain search warrant applications that the Government submitted in connection with the investigation of this case.[1]  The Government's response advised the Court

---

[1]  The affidavits were never sworn out because the Court indicated it was not inclined to approve them and was holding them in abeyance on other grounds pending

that it had ***no objection*** to the unsealing of those applications and the Court's order rejecting the applications.

Shortly after the applications were unsealed, counsel for defendant Fort sent an e-mail to Government counsel demanding an immediate meet and confer, by the next day. The Government's counsel obliged, and we had a videoconference with Fort's counsel that last approximately 50 minutes. During that conference, Fort's attorneys asked the Government if it would correct the erroneous allegation contained in one or more of the unsealed applications (*i.e.*, the erroneous allegation that defendant Fort joined in chanting inside Cities Church on January 18, 2026). In summary, the Government's counsel confirmed that we would review the matter and take appropriate action to address the matter in accordance with standard DOJ policy.

The Government's counsel commenced such a review, but defendant FORT opted to file her pending motion instead of allowing the Government a reasonable opportunity to correct the record voluntarily.

For the record, the Government's review found that the erroneous reference to defendant Fort participating in chants originated in one of the

---

further briefing. The Government disagreed with the Court's order holding those warrant applications in abeyance, but we opted simply to withdraw all of the applications. The Government never obtained any evidence as a result of the non-issued warrants.

earliest search-warrant affidavits, and that early draft was relied upon when preparing subsequent warrants. *See* 26-mj-088 (Allen phone contents), 26-mj-089 (Kelly Airbnb residence), 26-mj-107 (Lundy Cell-Site Simulator), 26-mj-108 (Richardson Cell-Site Simulator), 26-mj-109 (Crews GPS tracking-warrant), 26-mj-113 (Richardson GPS tracking-warrant), and an application for a Cell-Site Simulator warrant regarding defendant Richardson in the Eastern District of Pennsylvania. Those affidavits contained substantially similar language stating that broadcast video showed "Armstrong, Allen, Lemon, Richardson, Kelly, Fort, Lundy, [and] Crews chanting with agitators and obstructing parishioners' path of travel." *See* 26-mj-088, ¶ 43; 26-mj-089, ¶ 43; 26-mj-107, ¶ 36; 26-mj-108, ¶ 43; 26-mj-109, ¶ 48; 26-mj-113, ¶ 48; E.D. Pa. Cell-Site Simulator Warrant, ¶ 43. By reliance on the prior affidavits, the same allegation appeared in the later, unsworn warrant that is the subject of defendant Fort's motion. (*See* 26-mj-206, ¶¶ 16 and 17.)

## ARGUMENT

## I. Defendant FORT's Invocation of *Brady v. Maryland* is Out of Place

Defendant Fort repeatedly invokes *Brady v. Maryland*, 373 U.S. 83 (1963), but her motion never addresses the threshold requirements of a *Brady* claim: suppression and materiality. The central concern of *Brady* is the withholding of favorable material evidence from the defense. *Id*. at 87.

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Id*. at 87.

To establish materiality in the context of *Brady*, the "accused must show there is a reasonably probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different." *United States v. Tate*, 633 F.3d 624 (8th Cir. 2011). Fort's motion fails to articulate why the material is *Brady* or why any such claim has any relevance this far in advance of trial.

### A. Defendant Fort has Not Established that Anything has been Suppressed

By defendant Fort's own admission, the videos, reports, affidavits, screenshots, and investigative materials upon which she relies were produced by the Government. Moreover, as we have made clear to all defense counsel and this Court in prior filings, the Government is continuing to produce new discovery on a rolling basis as it becomes available. Thus, Fort's invocation of Brady is really out of place. (Dkt. 528 at 6.)

Even assuming *arguendo* that the unsworn affidavits and unissued search warrants are *Brady* (or *Giglio*), a *Brady* violation does not occur where the disclosure is merely delayed, but nonetheless disclosed prior, or even during trial. "[W]here disclosure of exculpatory evidence is delayed, but the

9

evidence is nonetheless disclosed during trial, *Brady* is not violated." *United States v. Gonzales*, 90 F.3d 1363, 1369 (8th Cir. 1996). This is because *Brady* and *Giglio* are both rules derived from the Sixth Amendment right to a "fair trial." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Thus, the Supreme Court has made clear that the rights to exculpatory and impeachment information under *Brady* and *Giglio* are "trial-related rights." *Id.*; *see also United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) ("Under the rule in our circuit[,] *Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial.").

Here, the evidence that Fort is concerned about — namely, the warrant application with the erroneous allegation about her conduct at the Church on January 18, 2026 — has already been disclosed, without objection from the Government. (*See* Dkt. 524 ("On May 15, 2026, the government informed the Court that it did not object to unsealing….").) In fact, during the parties' May 27, 2026 meet-and-confer, the Government advised Fort's Counsel that it intended to disclose other affidavits and warrant applications, which have since been disclosed.[2] In short, the fact that a given document has not been

---

[2] On June 5, 2025, the Government disclosed to defense counsel approximately 21 search warrant applications and related materials as part of its discovery.

10

disclosed in the Government's initial discovery production does not constitute an action of "suppression" under *Brady*.  Without suppression at trial, there can be no *Brady* violation.

### B.     Defendant Fort has Not Established the Materiality of Alleged Evidence

Similarly, defendant Fort has not established that the evidence requested is "material."  Evidence the government must disclose under *Brady* must be material to either guilt or punishment.  *United States v. Tate*, 633 F.3d 624, 630 (8th Cir. 2011).

Here, defendant Fort's motion is prompted by search warrant applications prepared for signature by an agent who did not testify before the grand jury.  Although any mistake in a warrant affidavit is significant (and the Government tries very hard to avoid them), the key facts here are that the allegation regarding defendant Fort chanting is not alleged in the original Indictment or Superseding Indictment.  As noted above in the Statement of Facts, neither the original Indictment nor the Superseding Indictment allege that defendants Fort or Lemon engaged in any chanting while at Cities Church on January 18, 2026.  (*See* Dkt. 39 at 8-9; Dkt. 144 at 12-13.)  In fact, they are conspicuously absent from Overt Act #25 in the Superseding

11

Indictment, which sets forth a long list of defendants who did engaged in some chanting at the Church. (Dkt. 144 at 12.)[3]

## II. Defendants Fort and Lemon Have Not Established a Basis for Disclosure of Grand Jury Proceedings

Fort's and Lemon's motions for disclosure of grand jury materials (Dkts. 528, 536) essentially recycle earlier, similar motions. However, as the Government has explained in prior opposition briefs, grand jury materials are not subject to routine disclosure. *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979) ("the proper functioning of our grand jury *depends* upon the secrecy of grand jury proceedings") (emphasis added).

Because of the necessary secrecy of the grand jury, disclosure may occur only upon a showing of a particularized need that outweighs the historic policy of grand jury secrecy. *Id.* The burden rests with the party seeking disclosure. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682-83 (1958). Disclosure is ordinarily limited to exceptional circumstances in which the movant demonstrates a concrete and particularized need for

---

[3] Fort's motion also contends that the protective order should not apply to video exhibits cited in the motion. (Dkt 528 at 5 n.3.) The Government notes that the protective order applies only to the discovery issued by the Government in this case. If the videos are publicly available through third parties, that does not make them subject to the protective order simply because they were also produced by the Government in this case. The Government has made no effort to restrict the availability of publicly available information.

specific grand jury materials. *See Dennis v. United States*, 384 U.S. 855, 870 (1966).

"[G]rand jury minutes [and] witness transcripts… are entitled to the greatest protection under the Rule 6(e)." *Missouri v. W.E.R*, 55 F.3d 350, 354 (8th Cir. 1995). To demonstrate a particularized need for disclosure, a defendant must show the disclosure is: "(1) required to avoid possible injustice in a different judicial proceeding, (2) greater than the need for continued secrecy, and (3) specifically directed at the material required." *United States v. McDougal*, 559 F.3d 837, 841 (8th Cir. 2009).

## A.    Defendant Fort Fails *McDougal*

Here, Defendant Fort fails to establish any of the three requirements set forth in *McDougal*. Fort's motion ignores the fact that the chanting allegation is not a legally-required element. It's a fact that can be argued at trial. The Government does not, however, need to allege and prove that either Fort or Lemon engaged in chanting while at the Church. In a bank robbery case, for example, the Government does not need to prove that the wheelman accomplice entered the bank and made an unlawful demand to take money from the teller. In a case like this, where the crime was committed through the joint action of multiple perpetrators, not every defendant has to engage in the exact same specific conduct as others to effectuate — and be guilty of — the charged crime.

13

Moreover, as noted above, the original Indictment and Superseding Indictment do not allege that defendants Fort and Lemon engaged in acts of chanting while at the Church on January 18, 2026. (*See* Dkt. 39 at 8-9; Dkt 144 at 12-13.) As noted above, Fort and Lemon are not listed in Overt Act #25 of the Superseding Indictment, which contains a list of the defendants who did engage in chanting while at the Church. *Id.*

Defendant Fort also makes no serious effort to explain why her stated need to immediate disclosure of all grand jury proceedings is "greater" than the Government's need for continued secrecy. As we have noted in prior filings, the Government's investigation remains open, and the Government is considering additional charges. Thus, there is a compelling need for continued maintenance of the grand jury proceedings in this case.

## B.    Defendant Lemon also Fails *McDougal*

Similarly, defendant Lemon's motion (Dkt. 536) is also without merit. He largely recycles his previous motions on the same matter (*see* Dkts. 125, 413, 525, 529), and those arguments are invalid for the same reasons noted in the Government's previously-filed opposition brief (*see* Dkt. 479), which we incorporate here by this reference.

Defendant Lemon's sole new argument is based on the fact that the Government recently applied for permission to disclose the transcript of one

14

victim-witness's grand jury testimony.[4]  (Dkt. 536 at 2.)  He argues that disclosure justifies the compelled disclosure of the other transcripts.  That's quite a ratchet; it works in only one direction.  Whether the Government discloses something or fails to do so, it means that everything else must be disclosed and disclosed immediately.

The Government opted to apply for disclosure of the transcript of the one victim-witness's testimony as part of our general effort to produce as much as possible as early as possible.  Consistent with the standard practice of the Government's undersigned counsel, the Government is producing materials that — according to local practitioners — are generally not produced by the Government until far closer to trial (*e.g.*, agent notes).  Moreover, as noted above, the Government's investigation remains open, and additional charges are being contemplated.  Defendant Lemon cites no particularized need to overcome that fact.

## C.    Defendants' Request For *In Camera* Review

In response to past motions, the Government has taken the position that defendants' prior, and still pending, motions do not warrant *in camera* review of all of the grand jury transcripts in this matter.  *See United States v.*

---

[4]  On June 4, 2026, the Court granted the Government's application for an Order authorizing the government to disclose (1) the transcript of the one referenced victim-witness's Grand Jury testimony, and (2) certain sealed documents to defendants for purposes of discovery in this case.  (Dkt. 537.)

*Finn*, 919 F.Supp. 1305, 1327 n.27 (D. Minn. 1995) (declining both disclosure of, and *in camera* review of, grand jury materials) (citing *United States v. Singer*, 660 F.2d 1295, 1302 n.15 (8th Cir. 1981). As to all of the transcripts, the Government maintains that position here.

However, in preparing its response to defendant Fort's motion (but not Lemon's), the Government has noted two lines of testimony that it believes should be disclosed *in camera* for the Court's consideration. Under Rule 6, the Government is not here able to explain the issue further, but the Government will prepare and file a document for the Court's *in camera* review. With the Court's permission, the Government proposes that it be allowed to make that filing on or before Friday of this week.

## III.    Defendant Fort's Other Case Authorities Are Inapposite

Defendant Fort's reliance on *United States v. Bagley*, 473 U.S. 667 (1985), *United States v. Agurs*, 427 U.S. 97 (1976), *Napue v. Illinois*, 360 U.S. 264 (1959), and *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974), is also misplaced. While those cases address important constitutional principles, none bear meaningful resemblance to the circumstances presented here. Simply put, they do not support Fort's request for extraordinary relief.

Both *Bagley* and *Agurs* addressed the Government's obligation to disclose favorable evidence and the materiality standards applicable to disclosure claims. Critically, neither case suggests that every inaccurate

16

statement during the course of an investigation automatically constitutes *Brady* material. Likewise, *Napue* and *Basurto* involved the knowing use of perjured testimony. *Napue v. Illinois*, 360 U.S. 264, 269-70 (1959); *United States v. Basurto*, 497 F.2d 781, 785-86 (9th Cir. 1974).

Fort's motion largely ignores the critical distinction between simple mistakes (*e.g.*, drafting errors) and knowing, intentional misconduct. The Eighth Circuit has repeatedly recognized that inadvertent or negligent inaccuracies do not establish intentional misconduct. *See United States v. Olderbak*, 961 F.2d 756, 763 (8th Cir. 1992). There, the court held that inaccuracies contained in the government's filing of its bill of particulars did not constitute prosecutorial misconduct, as the errors were not intentional and defendant failed to demonstrate actual prejudice. For the same reason, even if the subject warrant application had been sworn and approved, the inaccuracies would not have automatically voided the warrant. "Allegations of negligence or innocent mistake are insufficient to void a warrant." *United States v. Clapp*, 46 F.3d 795, 799 (8th Cir. 1995); *see also United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (same).

In this case, the Indictment and Superseding Indictment do not allege that either Fort or Lemon engaged in chanting while at the Cities Church on January 18, 2026. Likewise, the Indictment and Superseding Indictment also do not allege that defendant Fort used her camera as a weapon. Indeed,

17

they do not allege that any of the defendants used a weapon.  The erroneous allegation in the above-referenced search warrant applications are due to inadvertence and, ultimately, are not material.

## CONCLUSION

The Government requests leave to make an *in camera* submission for the Court's review.  On the basis of that forthcoming submission and the arguments set forth herein, the Court should deny defendant Fort's motion and defendant Lemon's joinder.

DATED: June 9, 2026

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Senior Trial Attorney

*/s/ Robert J. Keenan*
ROBERT J. KEENAN
  Civil Rights Division
  U.S. Department of Justice
  950 Pennsylvania Ave. NW
  Washington, DC 20530
  Telephone: (202) 230-2216
  E-Mail: Robert.keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA