**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA

      Plaintiff,

  v.

[8] Georgia Ellyse Fort,

      Defendant.

Case No. 26-cr-00025-LMP-DLM

**ORAL ARGUMENT REQUESTED**

**GEORGIA ELLYSE FORT'S MOTION TO DISMISS**
<u>**SUPERSEDING INDICTMENT FOR FAILURE TO STATE AN OFFENSE**</u>
**(FORT MOTION NO. 2)**

**BALLARD SPAHR**
Leita Walker
Matthew S. Ebert
Isabella Salomão Nascimento
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3211
walkerl@ballardspahr.com
ebertm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

**THE LAW FIRM OF KEVIN C. RIACH, PLLC**
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com

*Counsel for Defendant Georgia Ellyse Fort*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................................ii

INTRODUCTION ......................................................................................................... 1

LEGAL STANDARD ................................................................................................... 2

ARGUMENT.................................................................................................................. 4

I.      THE SUPERSEDING INDICTMENT DOES NOT ALLEGE A FACE ACT VIOLATION ........................................................................................ 5

      A.      The FACE Act's Elements Are Clearly Enumerated in Statute and Case Law .......................................................................................... 6

      B.      The Superseding Indictment Fails to Allege Facts That Constitute a Violation of the FACE Act ........................................... 8

II.     THE SUPERSEDING INDICTMENT DOES NOT ALLEGE A CONSPIRACY AGAINST RIGHTS.......................................................... 14

      A.      The Elements of Conspiracy Against Rights Are Clearly Enumerated in Statute and Case Law........................................... 14

      B.      The Government Fails to Allege Facts that Satisfy Any Element of the Conspiracy Against Rights Statute ..................................... 16

III.    DISMISSAL WITH PREJUDICE IS WARRANTED ....................................... 21

CONCLUSION ........................................................................................................... 22

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Creighton*,
  483 U.S. 635 (1987)................................................................................................ 18

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969)................................................................................................ 13

*Ciminelli v. United States*,
  598 U.S. 306 (2023).................................................................................................. 2

*Counterman v. Colorado*,
  600 U.S. 66 (2023)................................................................................................7, 9

*Goyette v. City of Minneapolis*,
  2021 WL 5003065 (D. Minn. Oct. 28, 2021) ........................................................ 13

*Harris News Agency, Inc. v. Bowers*,
  809 F.3d 411 (8th Cir. 2015) ................................................................................. 12

*Kaplan v. Al Jazeera*,
  2011 WL 2314783 (S.D.N.Y. June 7, 2011) ......................................................... 13

*Loe v. Jett*,
  796 F. Supp. 3d 541 (D. Minn. 2025)..................................................................... 17

*Morgan v. Robinson*,
  920 F.3d 521 (8th Cir. 2019) ................................................................................. 18

*Russell v. United States*,
  369 U.S. 749 (1962)...............................................................................................3, 4

*United States v. Ahmed*,
  --- F. Supp. 3d ---, 2026 WL 1724159 (D. Minn. June 12, 2026) .......................... 22

*United States v. Dinwiddie*,
  76 F.3d 913 (8th Cir. 1996) ..................................................................................6, 7

*United States v. Ehrlichman*,
  546 F.2d 910 (D.C. Cir. 1976)............................................................................... 15

*United States v. Guest*,
  383 U.S. 745 (1966)............................................................................................... 15

ii

*United States v. Hansmeier*,
  988 F.3d 428 (8th Cir. 2021) ................................................................................ 2

*United States v. Hart*,
  212 F.3d 1067 (8th Cir. 2000) ........................................................................... 6, 9

*United States v. Hayes*,
  574 F.3d 460 (8th Cir. 2009) ........................................................................... 13, 20

*United States v. Hill*,
  464 F.2d 1287 (8th Cir. 1972) ............................................................................ 12

*United States v. Hughson*,
  488 F. Supp. 2d 835 (D. Minn. 2007)................................................................... 2

*United States v. Ivey*,
  915 F.2d 380 (8th Cir. 1990) .............................................................................. 12

*United States v. Kozminski*,
  487 U.S. 931 (1988)............................................................................................ 15

*United States v. Lanier*,
  520 U.S. 259 (1997)........................................................................... 3, 15, 17, 18

*United States v. Lee*,
  6 F.3d 1297 (8th Cir. 1993) ................................................................................ 15

*United States v. McDermott*,
  29 F.3d 404 (8th Cir. 1994) ................................................................................ 15

*United States v. O'Hagan*,
  139 F.3d 641 (8th Cir. 1998) .............................................................................. 13

*United States v. Olson*,
  262 F.3d 795 (8th Cir. 2001) .............................................................................. 17

*United States v. Oropesa*,
  159 F.4th 912 (11th Cir. 2025) ........................................................................... 16

*United States v. Senogles*,
  570 F. Supp. 2d 1134 (D. Minn. 2008)................................................................. 2

*United States v. Steffen*,
  687 F.3d 1104 (8th Cir. 2012) .............................................................................. 3

iii

*United States v. Zangger*,
  848 F.2d 923 (8th Cir. 1988) ................................................................. 3, 17

*Virginia v. Black*,
  538 U.S. 343 (2003) ................................................................................. 7

*White v. Pauly*,
  580 U.S. 73 (2017) .................................................................................. 18

**Statutes**

18 U.S.C. § 241 ................................................................................ 4, 14, 15

18 U.S.C. § 248 ....................................................................................*passim*

**Other Authorities**

Fed. R. Crim. P. 7 .......................................................................................... 3

Fed. R. Crim. P. 12 .................................................................................... 1, 2

Local Rule 12.1............................................................................................. 1

EIGHTH CIR. PATTERN CRIM. JURY INSTRUCTION, § 6.18.241 .......................... 14

Pursuant to Federal Rule of Criminal Procedure 12(b) and Local Rule 12.1, Georgia Ellyse Fort moves this Court to dismiss the superseding indictment against her with prejudice because the government has failed to adequately allege facts that, if proven, would establish the elements necessary to proceed under the terms of the statutes she is charged with violating.[1]

## **INTRODUCTION**

On January 18, 2026, in her capacity as a journalist, Fort covered an anti-ICE protest at Cities Church in St. Paul, Minnesota.  Shortly thereafter, the government charged Fort—along with other journalists and dozens of protesters—with two federal felonies that together carry a prison sentence of up to 20 years.  The 19-page superseding indictment extensively details the protest from its inception through its execution.  Yet, the *only* facts specifically alleged as to Fort are that she (1) observed part of a meeting of the protesters on the morning of the protest, (2) entered the Church where the protest occurred, (3) walked up to and stood near the Pastor while he was interviewed by another journalist, and (4) interviewed one of the protest's organizers outside, once the protesters left the Church.  Notably absent from these 19 pages is any allegation that Fort used force against another person, issued a threat of violence to anyone, blocked ingress to or egress from the Church or made it too difficult or hazardous for the parishioners to leave the

---

[1] In two concurrently filed motions, Fort has also sought dismissal on the grounds that (1) this prosecution violates Fort's constitutional rights secured by the Speech and Press Clauses of the First Amendment (Fort Motion No. 1), and (2) this is a vindictive prosecution (Fort Motion No. 3).

1

Church at will, or entered an agreement with anyone else to do any such acts. But that is precisely what the statutes Fort is charged with violating *require* in order to state an offense. The superseding indictment's factual averments against Fort, even if presumed true and read in the light most favorable to the government, fail to make out either charged offense against her. Accordingly, Counts One and Two should be dismissed against her with prejudice.

## LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b), a court is authorized to dismiss an indictment if the government "fail[s] to state an offense" in the indictment. Fed. R. Crim. P. 12(b)(3)(B)(v). Among other reasons, an indictment fails to state an offense if it omits an element of the offense or alleges facts that, even if true, "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *See Ciminelli v. United States*, 598 U.S. 306, 316-17 (2023) (dismissal warranted, for example, if the charged conduct falls outside the statute's scope or relies on an invalid legal theory). Thus, to withstand a motion to dismiss, the indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which she has been charged. *United States v. Hughson*, 488 F. Supp. 2d 835, 840 (D. Minn. 2007). While the Court accepts the indictment's factual allegations as true, *United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021), if they do not constitute a criminal offense, dismissal is required. *United States v. Senogles*, 570 F. Supp. 2d 1134, 1143 (D. Minn. 2008).

An indictment must be a "plain, concise, and definite written statement of the

2

essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It must also provide two key constitutional safeguards for the defendant: first, it must contain every element of the offense and sufficiently apprise the defendant of "the nature of the accusation against her"; and second, it must allow the defendant to establish double jeopardy were the charge renewed in a future case. *See Russell v. United States*, 369 U.S. 749, 763-64, 767 (1962); *see also United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012) (affirming dismissal of an indictment that did not sufficiently allege the defendant engaged in the essential elements of the charged offense). If an essential element of the charge has been omitted from the indictment, that omission cannot be cured by a bare citation to the charging statute. *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (citations omitted).

In that vein, an indictment that merely tracks the language of the statute does not necessarily apprise the defendant of the crime with which she is being charged. *See Russell*, 369 U.S. at 764 (noting that language charging a violation of 2 U.S.C. § 192, making it an offense to refuse to answer any question of Congress that is "pertinent[] to the subject under inquiry," was fatally deficient where it failed to identify the pertinent area of inquiry). Tracking the statutory language is particularly insufficient where the law at issue, like the Conspiracy Against Rights statute here, fails to identify the conduct it prohibits and instead incorporates by reference rights defined elsewhere—namely, in the Constitution and in federal laws. *See United States v. Lanier*, 520 U.S. 259, 265 (1997) (observing that, "in lieu of describing the specific conduct it forbids, each statute's general terms incorporate constitutional law by reference" resulting in "neither the

3

statutes nor a good many of their constitutional referents delineat[ing] the range of forbidden conduct with particularity"). Although an indictment certainly need not include every fact that the government intends to use at trial to support its case, *see, e.g.*, *United States v. Morales*, 813 F.3d 1058, 1067 (8th Cir. 2016), it must include a sufficient factual basis to support the charge, *see Russell*, 369 U.S. at 768.

As demonstrated below, the superseding indictment in this case must be dismissed for failure to state an offense because it: (1) fails to include every element of the offense; (2) depends entirely upon factual allegations that, even if true, do not establish the elements of the offense; and (3) rests upon incorrect and/or inaccurate theories of liability.

## **ARGUMENT**

The superseding indictment charges Fort with violating (1) 18 U.S.C. § 241, Conspiracy Against Rights, and (2) 18 U.S.C. § 248(a)(2), (b), § 2(a), Freedom of Access to Clinic Entrances (the "FACE Act"). Despite charging Fort through a 19-page speaking indictment that contains 41 enumerated overt acts, *none* of the few facts actually alleged against her amounts to an offense. In fact, Fort is only expressly named in the following three overt acts:

- Overt Act #13: On the morning of January 18, 2026, [34 defendants, including FORT], together with others, gathered for a pre-operation briefing led by defendants ARMSTRONG and ALLEN at the parking lot of Cub Foods at 1440 University Avenue W., St Paul, MN 55104.

- Overt Act #35: With other co-conspirators standing nearby, defendants LEMON, RICHARDSON, FORT, and BEUTE approached the pastor and largely surrounded him (to his front and

4

both sides), stood in close proximity to the pastor in an attempt to oppress and intimidate him, and physically obstructed his freedom of movement while LEMON peppered him with questions to promote the operation's message.

- Overt Act #41: As a minivan full of congregants including children, was preparing to depart from the Church, defendant KELLY walked in front of the minivan and angrily yelled at the congregants, and defendants ARMSTRONG and FORT stood in front of the minivan while FORT interviewed ARMSTRONG.

ECF 144 ¶¶ 8(13), (35), (41).[2]  As demonstrated below, none of these alleged facts suggests Fort engaged in each of the essential elements of the charged offenses. Accordingly, the superseding indictment must be dismissed.

## I.      THE SUPERSEDING INDICTMENT DOES NOT ALLEGE A FACE ACT VIOLATION

In Count Two, Fort is charged with personally violating and aiding and abetting others in violating 18 U.S.C. § 248(a)(2), the worship provision of the FACE Act.[3]  The facts alleged in the superseding indictment, however, plainly fail to amount to such an offense by Fort, under either theory.

---

[2] In a meet-and-confer between the parties on July 1, 2026, the government repeatedly represented that its "case against Ms. Fort [i]s limited to only the paragraphs of the superseding indictment in which she is expressly named and that it otherwise does not consider general references to 'defendants' to include Ms. Fort." *See* Ex. 42 at 3 (unanswered letter memorializing parties' discussion and inviting clarification if letter did not "accurately capture" government's representations).

[3] Because Count One (Conspiracy Against Rights) depends almost entirely on the validity of Count Two (the FACE Act), Fort discusses the elements and legal requirements of Count Two first.

### A.    The FACE Act's Elements Are Clearly Enumerated in Statute and Case Law

The FACE Act prohibits the use of "force," "threat of force," or "physical obstruction" that "intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship."  18 U.S.C. § 248(a)(2).  Thus, to state an offense under Section 248(a)(2), an indictment must allege facts that show the defendant (1) used force, the threat of force, or physical obstruction, and (2) acted with the intent to injure, intimidate, or interfere with another person, (3) who was lawfully exercising their First Amendment right of religious freedom at a place of worship.  18 U.S.C. § 248(a)(2); *see also United States v. Dinwiddie*, 76 F.3d 913, 921 (8th Cir. 1996) ("FACE criminalizes three types of activity—the use of 'force,' 'threats of force,' and 'physical obstruction.'"); *United States v. Hart*, 212 F.3d 1067, 1073 (8th Cir. 2000) (same).

The definitions set forth in Subsection (e) of Section 248 narrow the reach of the FACE Act even further.  For example, "[to] intimidate" is defined as only those acts which "place a person in reasonable apprehension of bodily harm."  18 U.S.C. § 248(e)(3).  To constitute "physical obstruction," a defendant's conduct must "render[] . . . ingress to or egress from . . . a place of religious worship" either "impassable" or "unreasonably difficult or hazardous."  *Id*. § 248(e)(4).  And the statute defines "to interfere with" as only those actions that "restrict a person's freedom of movement."  *Id*. § 248(e)(2).

6

Although the term "threat" is not defined in the statute, the U.S. Supreme Court has limited criminal charges only to "true threats," meaning a statement "where the speaker *means* to communicate a serious expression of an *intent to commit an act of unlawful violence* to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (emphasis added); *see Counterman v. Colorado*, 600 U.S. 66, 75, 81 (2023) (discussing constitutional importance of strict *mens rea* requirements, particularly when the speech at issue is "a hair's-breadth away from political 'advocacy'"). Moreover, the Eighth Circuit, in addressing the constitutionality of a parallel provision of the FACE Act, held that the threats outlawed by the statute were only those that meet the statutory definition of "intimidation," meaning threats that place a person "in reasonable apprehension of bodily harm." *Dinwiddie*, 76 F.3d at 922; *id*. at 925 ("The First Amendment does not permit the government to punish speech merely because the speech is forceful or aggressive.").

Thus, Section 248 requires that a defendant *both* (1) engaged in one of three prohibited actions (the use of physical force, issuance of a true threat intended to put someone in fear of bodily harm, or physical obstruction that renders impassable ingress to or egress from a building), *and* (2) did so with the specific intent to injure, place in reasonable apprehension of bodily harm, or restrict the movement of a person who is lawfully exercising their First Amendment right to worship freely.

7

### B.   The Superseding Indictment Fails to Allege Facts That Constitute a Violation of the FACE Act

Although Count Two parrots the language of Section 248(a)(2)—alleging generically that the defendants "intentionally injured, intimidated, and interfered with" parishioners' First Amendment right to worship freely "by use of force, threat of force, and physical obstruction," ECF 144 ¶ 10—the government's factual narrative in the superseding indictment does not actually establish the offense, particularly insofar as Fort is concerned.  ECF 144 ¶ 10; *see also* note 2, *supra*.

**First**, it is undisputed that the government has not alleged that Fort (or any other defendant, for that matter) used force during the events on January 18.  *See generally* ECF 144.

**Second**, the government likewise has not alleged that Fort threatened force.  Nor could it.  The government does not allege that Fort said anything to anyone while inside the Church.  *See generally id*.; ECF 539 at 5 (conceding "the Superseding Indictment does not allege that either defendant FORT or defendant LEMON engaged in chanting while inside Cities Church on January 18, 2026").  At most, it alleges she "approached" the Pastor and "stood in close proximity to" him, neither of which comes anywhere near meeting the constitutional requirement for conduct constituting a true threat.  ECF 144 ¶ 8(35).

In fact, the superseding indictment does not allege that anyone—including the Pastor—felt threatened by Fort or had reason to fear that she would engage in violence.  Nor could it.  The allegations themselves reveal that no reasonable person could have

8

perceived Fort's journalistic conduct as threatening, and—crucially—the superseding indictment does not even attempt to make such an allegation. *Hart*, 212 F.3d at 1071 (whether "a true threat exists" depends on the "entire factual context," including whether "it expresses a determination or intent to injure" and "whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence"); *Counterman*, 600 U.S. at 74 ("True threats subject individuals to 'fear of violence.'"). Significantly, the government's key percipient grand jury witness repeatedly disclaimed under oath that he felt "physically threatened" by Fort while she livestreamed ████ ████████, instead testifying that he "did not expect" any "bad behavior" from "those people who were interviewing" and that "[t]he biggest issue with that was not my personal safety." Ex. 40 at 39:1-40:18.

 ***Third***, the government's "physical obstruction" allegations regarding Fort actually undermine its case and contradict the required statutory language. For example, the superseding indictment alleges that the "defendants collectively . . . physically occup[ied] *most* of the main aisle," as a result of which parishioners "fled" (*i.e.*, left) "the Church building," including through "alternative" exits. ECF 144 ¶¶ 4, 8(29), 8(39). While the government does not allege that Fort was among the defendants engaged in such conduct, *see* note 2, *supra*, even if it did, the government's allegations would not, if proven, establish a violation of the FACE Act because, at most, the government is alleging that some defendants stood in the center aisle, leaving some of it open, while parishioners

9

freely left the Church through both its main doors and other exits.[4]  Given that "physical obstruction" as defined by the statute requires conduct that renders ingress or egress either completely impassable or unreasonably hazardous or difficult, the government's allegations in the superseding indictment do not qualify.  18 U.S.C. § 248(e)(4).

In Overt Act #35, the government claims Fort and her fellow journalists "largely surrounded" the Pastor, while one journalist (Don Lemon, Defendant No. 4) "peppered him with questions" (*i.e.*, interviewed him).  Setting aside that the First Amendment precludes criminalizing citizens speaking to, listening to, and/or observing one another, *see* Fort Motion No. 1 at 52-70, and that parishioners similarly surrounded the Pastor as he was being interviewed, *see id.* at 19-20, the government does not plead that the Pastor's path was rendered impassible, hazardous or difficult.  To "largely" surround someone necessarily means the person retains an ability to walk away.  Nor could the government contend otherwise, given that all available video evidence, witness statements, and grand jury testimony confirm that he was not impeded.  *See* Ex. 12 at 00006990 (███████████ describing how "Lemon and the others," including Fort, "moved out of ███ way" so he could pass freely); Ex. 40 at 26:1-2 ("after the interview ended," the journalists "kind of disbanded" from standing near him).  This allegation also says nothing about passage to or from *the Church* being "impassable or unreasonably

_____

[4] This is corroborated by the various video feeds, showing a number of parishioners immediately leaving the Church and others filing out more slowly during the protest, and eye-witness statements, in which some parishioners explained they were able to *exit and re-enter* the Church at will.  *See* Fort Motion No. 1 at 14-16 (citing Exs. 1, 8, 9, 10, 11, 40).

difficult or hazardous," which is what the statute requires.  18 U.S.C. § 248(e)(4).  It therefore does not state a FACE Act violation.

Finally, in Overt Act #41, the government includes an allegation against Fort that does not even take place inside the Church, near any of its entrances or exits, or during services.  The superseding indictment offers no explanation how conducting an interview "in front of a minivan" outside, long after a religious service ended, constitutes "physical obstruction," intimidation, or interference with worship.  That is no surprise, because it does not.[5]

*Fourth*, there are no factual allegations in the superseding indictment that would plausibly support an allegation that Fort acted with the *intent* to injure, intimidate, or interfere with the parishioners' worship.  At most, the superseding indictment alleges that she observed part of a meeting, entered the Church where the protest occurred, engaged in newsgathering during the protest, including to participate in another journalist's interview with the Pastor, and interviewed other key individuals connected with the protest, *i.e.*, acted as a journalist.[6]  *See* ECF 144 ¶¶ 8(13), (14), (35), (41).  Indeed, the superseding does not allege that Fort engaged in any chanting or other activity that could be characterized as protesting.  None of this supports an inference that Fort possessed the specific intent the FACE Act requires.  In the absence of any allegations from which her

---

[5] While failing to state an offense on its face, this allegation is doubly problematic because all available evidence of the conduct at issue in Overt Act #41 is attributed solely to a male.  *See* Fort Motion No. 1 at 22-23.

[6] As explained in Fort Motion No. 1, the government does not dispute that Fort attended the protest solely in her capacity as a journalist.  *See id*. at 50-67.

11

intent could be inferred, the government resorts to using loaded language to impute criminal intent on wholly legal activity. *See* ECF 144 ¶¶ 3 (referring to the defendants as "agitators" and describing the protest as "a coordinated takeover-style attack" on the Church). But that is not enough to satisfy the intent the FACE Act requires. In other words, the superseding indictment is devoid of any factual support for the notion that Fort engaged in any conduct on January 18 with the intent to injure or intimidate anyone or to interfere with their worship.

*Fifth*, and finally, the government's meager allegations against Fort do not suffice to establish that she aided and abetted a FACE Act violation either. To do so, the government would have to show that Fort "had a 'purposeful attitude,' defined as affirmative participation which at least encourages the perpetrator." *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990). It cannot. "[A]llowing someone to commit a crime— in the sense of not stopping it—is not the same as committing it." *Harris News Agency, Inc. v. Bowers*, 809 F.3d 411, 413 (8th Cir. 2015). And merely being present at the scene of others' conduct, which is the full extent of the superseding indictment's allegations against Fort, does not constitute aiding and abetting, including because the government has failed to allege that she possessed the necessary intent. *United States v. Hill*, 464 F.2d 1287 (8th Cir. 1972) ("mere presence at the scene is insufficient, it must be accompanied by a culpable purpose").

Here, even taking as true all the government's factual allegations about Fort, the superseding indictment only establishes that, on January 18, Fort engaged in standard, constitutionally protected journalistic conduct. And the law is clear that a journalist does

12

not aid and abet or conspire with protesters simply by covering them. *See, e.g.*, *Goyette v. City of Minneapolis*, 2021 WL 5003065, at *5 (D. Minn. Oct. 28, 2021) (ruling that just because a journalist is *reporting* on an unlawful assembly does not equate "to *participating* in an unlawful assembly"), *superseded on other grounds*, 2022 WL 370161 (Feb. 8, 2022); *see Kaplan v. Al Jazeera*, 2011 WL 2314783, at *6 (S.D.N.Y. June 7, 2011) ("Unlike a financial donation to a terrorist organization, news coverage of the activities of a terrorist organization" serves "an entirely different and acceptable purpose, namely, delivering important information to the public."); *see also* Fort Motion No. 1 at 50-70 (collecting cases establishing that journalists reporting on conduct does not mean they engaged in, facilitated, encouraged, or agreed to it).[7]

The absence of any factual allegations that would, if proven, establish any of these elements, let alone all of them as required, is fatal to the superseding indictment. *See United States v. Hayes*, 574 F.3d 460, 472 (8th Cir. 2009) (indictment is insufficient where "it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted" (quoting *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008))); *United States v. O'Hagan*, 139 F.3d 641, 651 (8th Cir.

---

[7] In that regard, while the superseding indictment does not allege any facts indicating that Fort led or encouraged the Church protest, even if it had, such allegations are constrained not only by the statutes' specific intent requirements, but also by the First Amendment limitations on speech that purportedly encourages a violation of the law. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). The government does not even attempt to satisfy this demanding test—*i.e.*, that Fort somehow "encouraged" unlawful conduct—in connection with its allegations against her.

1998) (indictment insufficient where "no reasonable construction can be said to charge the offense" (citing *United States v. Morris,* 18 F.3d 562, 568 (8th Cir. 1994))). Count Two against Fort must therefore be dismissed.

## II.    THE SUPERSEDING INDICTMENT DOES NOT ALLEGE A CONSPIRACY AGAINST RIGHTS

In Count One, Fort is charged with conspiring to "oppress, threaten, and intimidate [members of Cities Church] in the free exercise and enjoyment of the rights and privileges secured to them by the laws of the United States," namely, the "exercise of the First Amendment right of religious freedom at a place of religious worship, as secured by [18 U.S.C. § 248(c)]," all in violation of 18 U.S.C. § 241.  ECF 144 ¶ 6.  The superseding indictment contains no factual allegations that, if proven, would amount to a violation of the Conspiracy Against Rights statute by Fort.  Indeed, it fails to allege key elements of the charge.

### A.    The Elements of Conspiracy Against Rights Are Clearly Enumerated in Statute and Case Law

Under Section 241, an indictment must allege facts showing that:

1.    the defendant and at least one other person agreed or came to an understanding to injure, oppress, threaten, or intimidate one or more persons;

2.    the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

3.    at the time the defendant joined the agreement, she intended to injure, oppress, threaten, or intimidate another's free exercise or enjoyment of any right or privilege secured to them by the Constitution or laws of the United States.

18 U.S.C. § 241; EIGHTH CIR. PATTERN CRIM. JURY INSTRUCTION, § 6.18.241

14

(Conspiracy to Deprive a Person of Civil Rights (18 U.S.C. § 241)).

The Supreme Court has long held that Section 241 is a specific intent crime that requires the government to prove that the defendants conspired for the particular purpose of interfering with a federal right, *United States v. Guest*, 383 U.S. 745, 753 (1966), not merely to pursue a broader political or social objective. Section 241 itself "creates no substantive rights, but prohibits interference with rights established by the Federal Constitution or laws and by decisions interpreting them." *United States v. Kozminski*, 487 U.S. 931, 941 (1988).

The right in question must be "specific," *id.*, and the defendant must have "fair warning" that her conduct deprived the victim of that right, *Lanier*, 520 U.S. at 265-66. Section 241 thus prohibits "only *intentional* interference with rights made specific either by the express terms of the Federal Constitution or laws or by decisions interpreting them." *Kozminski*, 487 U.S. at 941; *see also United States v. Ehrlichman*, 546 F.2d 910, 922 (D.C. Cir. 1976) (Section 241 requires "specific intent" to commit acts depriving someone of a "clearly defined" right).

The interference prohibited by Section 241 must cause more than "hurt feelings, offense, or resentment." *United States v. McDermott*, 29 F.3d 404, 408 (8th Cir. 1994). Instead, the statute applies only to conduct that is "intended to . . . prevent the free action of other persons." *Id.* These elements therefore incorporate necessary guardrails to ensure Section 241 does not tread on defendants' own rights, including without limitation under the First Amendment. *See id.*; *see also United States v. Lee*, 6 F.3d 1297, 1297-1304 (8th Cir. 1993) (en banc).

15

**B.     The Government Fails to Allege Facts that Satisfy Any Element of the Conspiracy Against Rights Statute**

The superseding indictment fails on every level to allege that Fort joined any conspiracy, much less one intended to "oppress, threaten, and intimidate" the parishioners of Cities Church.

*First*, the superseding indictment fails to allege a critical element of the offense:  a right with which Fort supposedly conspired to interfere.  Although the government frames it as the "the First Amendment right of religious freedom at a place of religious worship, as secured by [18 U.S.C. § 248(c)]," Section 248(c) does not, on its own, establish or "secure" such a right.  It incorporates by reference Section 248(a)(2), which secures a much more narrow right to worship free from injury, intimidation, or interference "by force or threat of force or by physical obstruction."  *See also United States v. Oropesa*, 159 F.4th 912, 916 (11th Cir. 2025) (finding that a parallel provision of the FACE Act created "a statutory right to *be free from threatened and actual force* while seeking 'to obtain or provide reproductive health services.'" (emphasis added)).

Thus, assuming *arguendo* that 18 U.S.C. § 248 creates some sort of right that can be enforced under Section 241, it is limited to those narrow circumstances.  And yet, that limiting language does not appear anywhere in Count One of the superseding indictment.  Instead, Count One is premised on a non-existent right, unsecured by Section 248(c) or any other federal law.  Because the superseding indictment fails to allege that Fort violated a right that is actually secured by law, Count One does not state a cognizable

16

offense and must be dismissed.[8]  *See Zangger*, 848 F.2d at 925 (finding that, if an essential element is omitted from the indictment, then the defendant's Fifth Amendment right to be tried on charges found by a grand jury has been violated); *United States v. Olson*, 262 F.3d 795, 799 (8th Cir. 2001) ("It is well-established in this circuit that citation of the statute, without more, does not cure the omission of an essential element of the charge because bare citation of the statute 'is of scant help in deciding whether the grand jury considered' the missing element in charging the defendant." (quoting *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976))).

**Second**, Count One fails against Fort specifically because it is not "clearly established" that the conduct she engaged in—reporting on a protest in a church—is prohibited by Section 241.  Specifically, to be convicted of conspiracy under Section 241, a defendant must have "fair warning" that her conduct was "clearly" criminal.  *Lanier*, 520 U.S. at 265-67.  To that end, the Supreme Court has narrowed Section 241 to impose criminal liability only when the government can satisfy the same qualified immunity standard used to determine whether a public official can be held civilly liable for a constitutional violation.  *Id*. at 270 ("the object of the 'clearly established' immunity standard is not different from that of 'fair warning' as it relates to law 'made specific' for purposes of" Section 241).  In other words, a defendant can only be prosecuted under

---

[8] The government's formulation appears to be based upon the broader right to the free exercise of religion guaranteed by the First Amendment.  But that broader First Amendment right is only "secured" from intrusion by "governmental action," not the conduct of private citizens.  *Loe v. Jett*, 796 F. Supp. 3d 541, 567 (D. Minn. 2025) (citing *Carson ex rel. O.C. v. Makin*, 596 U.S. 767, 778 (2022)).

17

Section 241 if the right that is "secured," and by extension the conduct that is prohibited, has been "clearly established" at a "particularized" level. *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)); *see also Anderson*, 483 U.S. at 640 ("our cases establish that the right [the individual] is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense"); *White v. Pauly*, 580 U.S. 73, 79 (2017) (It is a "longstanding principle" that what is "clearly established" should "not be defined at a high level of generality." (internal marks omitted)).  Thus, while there "need not be a case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Morgan v. Robinson*, 920 F.3d 521, 524 (8th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

It is without question that—in addition to all of the other infirmities with the government's Section 241 charge against Fort, as explained herein—there is no clearly established law or precedent prohibiting a journalist from covering a newsworthy event such as a protest against a government official's conduct simply because the protest takes place at a church and disrupts a religious service.  To the contrary.  Multiple strands of controlling First Amendment authority establish that Fort was constitutionally protected in all of the conduct she engaged in on January 18:  observing, newsgathering, interviewing, and reporting.  *See* Fort Motion No. 1 at 52-70.  That conclusion is only bolstered by the fact that Section 248 itself—the law through which the government claims the right in question is "secured"—makes clear that First Amendment-protected conduct like Fort's simply is not actionable, civilly or criminally.  *See* Fort Motion No. 1 at 50-51.  Because the government cannot point to any authority that would have given

18

Fort, a journalist, "fair warning" that the FACE Act prohibits her from talking to, interviewing, and covering protesters solely because the protest took place inside of a church, Count One of the superseding indictment fails as a matter of law against her.  *See also* Fort Motion No. 1 at 52-70, 78-81.

*Third*, and finally, even assuming Section 248 secures a right *and* what conduct that right prohibits is "clearly established" insofar as Fort is concerned, the superseding indictment still fails to state a violation of the Conspiracy Against Rights statute by her. That is because the factual allegations it alleges do not meet any of the elements of that offense.

For one thing, Section 241 requires an "agreement" to "injure, oppress, threaten, or intimidate" a person in the exercise of a federally protected right.  Here, that means Fort must have agreed to "injure, intimidate, or interfere with" (or attempt to do those things) someone exercising their First Amendment right of religious freedom "by force or threat of force or by physical obstruction."  The superseding indictment, however, does not contain any facts to support that Fort reached any sort of agreement with anyone.  As explained above, and in Fort Motion No. 1, a journalist does not join a conspiracy simply by virtue of covering what may otherwise be an unlawful event.  *See* Argument, Part I.B, *supra*; Fort Motion No. 1 at 67-70 (detailing longstanding First Amendment limitations on allegations of conspiracy).

The closest the government comes to alleging any sort of agreement or conspiracy is in Overt Act #13, which states "[o]n the morning of January 18, 2026, [the defendants, including FORT], together with others, gathered for a pre-operation briefing led by

19

defendants ARMSTRONG and ALLEN at the parking lot of Cub Foods[.]" ECF 144 ¶ 8(13). But as the superseding indictment also alleges, only some of the supposed "co-conspirators" were "advised" about "the target" of the protest and "provided instruction on how the operation would be conducted." *Id*. ¶ 8(14). Notably, it does not allege Fort was one of the individuals to whom the plan was disclosed. Nor could it, as all available evidence proves Fort left the meeting before those details were conveyed. *See* Fort Motion No. 1 at 13-14. The government has thus failed to allege that she knowingly joined any conspiracy, regardless of the conspiracy's intended purpose.

For another thing, beyond the government's generic recitation of the language of Section 241, there are no allegations in the superseding indictment that suggest any of the defendants—much less Fort—agreed to "injure, intimidate, or interfere with" (or attempt to do those things) anyone "by force or threat of force or by physical obstruction." *See* Argument, Part I.B, *supra*.

Simply put, the superseding indictment is completely devoid of facts suggesting that Fort (a) agreed to join a conspiracy (b) to oppress, threaten, or intimidate anyone (c) through the use of force, true threats, or physical obstruction, much less (d) with the intent to interfere with a person's First Amendment right to freely worship. And to the extent that the underlying statute, the FACE Act, includes a rule of construction that expressly exempts protected First Amendment activity, there is no basis to allege that her reporting could constitute such a crime. Absent such facts, the superseding indictment cannot stand against her. *See Hayes*, 574 F.3d at 472 (affirming that an indictment is insufficient if "it is so defective that it cannot be said, by any reasonable construction, to

20

charge the offense for which the defendant was convicted"). Dismissal is required.

## III.   DISMISSAL WITH PREJUDICE IS WARRANTED

While typically dismissal for failure to state an offense is without prejudice, the Court should dismiss the superseding indictment as to Fort with prejudice for at least two reasons. First, no amount of repleading—absent the government alleging facts it knows are false—can cure the superseding indictment's deficiencies with respect to Fort. The government has already admitted that any suggestion that Fort chanted in the Church or used her camera as "a weapon" would be false. It conceded that Fort was engaged in journalism at the Church, including participating in Lemon's interview with the Pastor and interviewing Levy Armstrong. It has already amended the allegation about the pre-protest meeting to clarify that Fort was not present for the entire meeting, including the portion when information about the protest to follow was disseminated. There are simply no additional, truthful facts the government could put before a grand jury that would amount to a violation of either Section 241 or 248 by her.

Second, dismissal with prejudice is also appropriate as a matter of law. There is no authority to support the government's contention that a journalist either conspires with or aids and abets someone supposedly engaged in unlawful conduct just by reporting on that individual's conduct from close proximity. Any suggestion otherwise runs headlong into black-letter First Amendment jurisprudence. *See* Fort Motion No. 1 at 50-70. Similarly, there is no clearly established law or precedent that prohibits a journalist from covering a newsworthy event such as a protest against a government official's conduct simply because the protest takes place at a church and disrupts a religious service. *See*

21

Argument, Parts I.B & II.B, *supra*; Fort Motion No. 1 at 57-65. As a result, there are no legal circumstances under which Fort could be prosecuted for violating either Section 241 or 248 for her conduct on January 18.

Thus, because there are no set of facts the government could allege, and no cognizable legal theory under which to allege them, that would amount to a viable FACE Act or Conspiracy Against Rights violation by Fort, dismissal of the superseding indictment with prejudice is warranted here. Anything less would leave Fort vulnerable to the government's continued harassment and retaliation, which, as she demonstrates in Fort Motion No. 3, is the true purpose of this prosecution. *See United States v. Ahmed*, --- F. Supp. 3d ---, 2026 WL 1724159, at *3 (D. Minn. June 12, 2026) (dismissal with prejudice is appropriate where needed "to guard against prosecutorial harassment" in the future) (citing, *inter alia*, *United States v. Salinas*, 693 F.2d 348, 353 (5th Cir. 1982) (reversing conviction and finding dismissal of previous indictment erroneous because it invited "future misconduct by the government")).

## CONCLUSION

Because the facts alleged in the superseding indictment do not and cannot legally amount to the charged crimes, and because it is based on a fundamental misunderstanding of the limitations of the governing laws, Fort respectfully requests that this Court dismiss the superseding indictment against her for failure to state an offense. Moreover, Fort's lawful conduct gives rise to no cognizable criminal offense and so prompt dismissal with prejudice is appropriate here.

Dated:  August 6, 2026

Respectfully submitted,

By: *s/ Matthew S. Ebert*

**BALLARD SPAHR LLP**
Leita Walker
Matthew S. Ebert
Isabella Salomão Nascimento
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3211
walkerl@ballardspahr.com
ebertm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

**THE LAW FIRM OF KEVIN C. RIACH, PLLC**
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com

*Counsel for Georgia Ellyse Fort*

23