# Exhibit 44

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| *United States of America* | Case No: 26-cr-00025-LMP-DLM |
| Plaintiff, | |
| v. | |
| *Nekima Valdez Levy-Armstrong et al.,* | |
| Defendants. | |

**DON LEMON AND GEORGIA FORT'S**
**JOINT MOTION TO DISCLOSE GRAND JURY PROCEEDINGS**

because they said it, and they are the government." *Id*. at 1, 3. Nor should the Court ignore the context in which these extraordinary legal maneuvers occurred—the President, Attorney General, Deputy Attorney General, and Assistant Attorney General for Civil Rights demanding these prosecutions; engaging in blatant politicization and name calling; misstatements of law; and the Administration posting doctored photos of defendants online. In a case where everything is irregular and troubling, and where local career prosecutors refused to participate, the government is not entitled to a presumption of regularity as to the grand jury proceedings.

Just last week, in this District, a court concluded that "Plaintiffs rebutted the 'presumption of regularity' that ordinarily attends public officials' actions" in a case against federal agencies possessing evidence collected from the scene of Alex Pretti's death. *Minn. Bureau of Crim. Apprehension v. Noem et al.*, 2026 WL 266463, at \*7 (D. Minn. Feb. 2, 2026). And in the wake of Operation Metro Surge, courts in this District have increasingly signaled that the government, under the direction of this Administration, is no longer operating in a manner entitled to any presumption of regularity. As Chief Judge Schiltz recently explained:

> Attached to this order is an appendix that identifies 96 court orders that ICE has violated in 74 cases. The extent of ICE's noncompliance is almost certainly substantially understated. This list is confined to orders issued since January 1, 2026, and the list was hurriedly compiled by extraordinarily busy judges. … *This list should give pause to anyone … who cares about the rule of law. ICE has likely violated more court orders in January 2026 than some federal agencies have violated in their entire existence.* … ICE is not a law unto itself.

21

*Tobay Robles v. Noem et al.*, No. 26-CV-0107-PJS-DLM, ECF 10 at 2–3 (D. Minn. Jan. 28, 2026) (emphases added); *id.*, ECF 7 at 3 (Jan. 26, 2026) (ordering "the head of a federal agency to personally appear," noting that this "is an extraordinary step" but that "the extent of ICE's violation of court orders is likewise extraordinary").

More broadly, federal judges in this District are facing a growing onslaught of unlawful and irregular practices wrought by the senior levels of the federal government. *See Patin Arevalo v. Bondi et al.*, No. 26-CV-0396-LMP-JFD, ECF 8 at 3 (D. Minn. Jan. 23, 2026) ("In what is fast becoming a disturbing trend, the Government has yet again violated (and is continuing to violate)" court orders.); *Jin v. Noem et al.*, No. 25-CV-1391-PJS-DLM, ECF 13 at 6 (D. Minn. Apr. 17, 2025) ("[T]he Court cannot imagine how the public interest might be served by permitting federal officials to flaunt the very laws that they have sworn to enforce."); *Moreta Duran v. Bondi et al.*, No. 25-CV-4816-MJD-JFD, ECF 11 at 3 (D. Minn. Jan. 25, 2026) (finding the Government's tactics "disturbing" and part of "an undeniable move by the Government in the past month to defy court orders or at least to stretch the legal process to the breaking point in an attempt to deny noncitizens their due process rights"); *Duton Bueno  v. Noem et al.*, No. 26-CV-0588-DWF-DJF, ECF 8 at 4 n.1 (D. Minn. Jan. 28, 2026) (finding that ICE's "deeply concerning" practice of racing detainees elsewhere to avoid due process in Minnesota federal courts "generally suggest[s] that ICE is attempting to hide the location of detainees").  Suffice it to say, these are not ordinary or "regular" times.

The pattern is apparent nationwide, too, as one court recently described: while "[g]enerations of presidential administrations and public officials have validated this

22

underlying premise of the presumption of regularity," "[i]n just six months, the President

of the United States may have forfeited the right to such a presumption" entirely.  *Fed.*

*Educ. Ass'n v. Trump*, 795 F. Supp. 3d 74, 90–92 (D.D.C. 2025),[23] *appeal docketed*, No.

---

[23] Cited in the order for support were the following decisions: *see, e.g., J.O.P. v. U.S. Dep't of Homeland Sec.*, 2025 WL 1431263, at *10 (4th Cir. May 19, 2025) (Gregory, J., concurring) ("As is becoming far too common, we are confronted again with the efforts of the Executive Branch to set aside the rule of law in pursuit of its goals. It is the duty of courts to stand as a bulwark against the political tides that seek to override constitutional protections and fundamental principles of law, even in the name of noble ends like public safety."); *President & Fellows of Harvard Coll. v. U.S. Dep't of Homeland Sec.*, 788 F. Supp. 3d 182, 205 (D. Mass. 2025) ("[T]he Court will not apply any presumption of regularity to conduct that is so unusual and therefore irregular on its face."), *appeal docketed*, No. 25-1627 (1st Cir. July 1, 2025); *In re Search of One Device and Two Individuals under Rule 41*, 784 F. Supp. 3d 234, 244 n.10 (D.D.C. 2025) ("Blind deference to the government? That is no longer a thing. Trust that had been earned over generations has been lost in weeks. Numerous career prosecutors have had to resign instead of taking actions that they believe violated their oath of office, or worse, were fired for upholding that oath."); *Washington v. Trump*, No. 25-0127 (JCC), ECF No. 53 at 13:13-15 (W.D. Wash. Jan. 24, 2025) ("I've been on the bench for over four decades. I can't remember another case where the question presented was as clear as this one is. This is a blatantly unconstitutional order."); *N.H Indonesian Cmty. Support v. Trump*, 765 F. Supp. 3d 102, 109 (D.N.H. 2025) ("[T]he Executive Order contradicts the text of the Fourteenth Amendment and the century-old untouched precedent that interprets it."); *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Off. of the President*, 774 F. Supp. 3d 86, 88 (D.D.C. 2025) ("The retaliatory nature of the Executive Order at issue here is clear from its face . . . ."); *Pacito v. Trump*, 2025 WL 1295660, at *7 (W.D. Wa. May 5, 2025) ("The Government's interpretation is, to put it mildly, 'interpretive jiggery-pokery' of the highest order. It requires not just reading between the lines, but hallucinating new text that simply is not there." (cleaned up)); *Associated Press v. Budowich*, 780 F. Sup. 3d 32, 49 (D.D.C. 2025) ("Indeed, the Government has been brazen about this."); *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 120 (D.D.C. 2025) ("In a cringe-worthy twist on the theatrical phrase 'Let's kill all the lawyers,' EO 14230 takes the approach of 'Let's kill the lawyers I don't like,' sending the clear message: lawyers must stick to the party line, or else."), *appeal docketed*, No. 25-5241 (D.C. Cir. July 2, 2025); *Abrego Garcia v. Noem*, 2025 WL 1021113, at *7 (4th Cir. Apr. 7, 2025) ("[T]his is a path of perfect lawlessness, one that courts cannot condone.") (Wilkinson, J., concurring); *United States v. Adams*, 777 F. Supp. 3d 185, 192 (S.D.N.Y. 2025) (The implication "that public officials may receive special dispensation if they are compliant with the incumbent administration's policy priorities . . . is fundamentally incompatible with the basic promise of equal justice under

23

law."); *LeBlanc v. U.S. Priv. & C.L. Oversight Bd.*, 784 F. Supp. 3d 1, 49 (D.D.C. 2025) ("To hold otherwise would be to bless the President's obvious attempt to exercise power beyond that granted to him by the Constitution and shield the Executive Branch's counterterrorism actions from independent oversight, public scrutiny, and bipartisan congressional insight regarding those actions."); *D.B.U. v. Trump*, 781 F. Supp. 3d 1158, 1168 (D. Colo. 2025) ("This sentence [in the government's brief] staggers. It is wrong as a matter of law and attempts to read an entire provision out of the Constitution."), *appeal docketed*, No. 25-1265 (10th Cir. July 8, 2025); *Jin v. Noem*, 2025 WL 1358665, at *2 (D. Minn. Apr. 17, 2025) ("[T]he Court cannot imagine how the public interest might be served by permitting federal officials to flaunt the very laws that they have sworn to enforce."); *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 35 (D.D.C. 2025) ("[The defendants] took immediate and drastic action to slash [United States Agency for Global Media], without considering its statutorily or constitutionally required functions as required by the plain language of the [executive order], and without regard to the harm inflicted on employees, contractors, journalists, and media consumers around the world. It is hard to fathom a more straightforward display of arbitrary and capricious actions than the Defendants' actions here."), *appeal docketed*, No. 25-5144 (D.C. Cir. Apr. 24, 2025); *Jenner & Block LLP v. U.S. Dep't of Just.*, 784 F. Supp. 3d 76, 99 (D.D.C. 2025) ("In short, the order raises constitutional eyebrows many times over."), *appeal docketed*, No. 25-5265 (D.C. Cir. July 22, 2025); *Abrego Garcia v. Noem*, 348 F.R.D. 594, 601 (D. Md. 2025) ("Defendants have failed to respond in good faith, and their refusal to do so can only be viewed as willful and intentional noncompliance."); *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 231-32 (D. Me. 2025) ("[The law] imposes numerous steps an agency must take before refusing or terminating funding for noncompliance . . . . [T]he factual record does not indicate the Federal Defendants took any of these actions before freezing Maine's federal funds . . . ."); *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 184 (D.D.C. 2025) ("This argument fails to persuade because it misconceives (and in one instance misrepresents) the Executive Order, Plaintiffs' claims, the law, and the facts."); *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 50 (D.D.C. 2025) ("[I]t appears that OMB sought to overcome a judicially imposed obstacle without actually ceasing the challenged conduct."); *Grundmann v. Trump*, 770 F. Supp. 3d 166, 171 (D.D.C. 2025) ("The Government's arguments paint with a broad brush and threaten to upend fundamental protections in our Constitution. But ours is not an autocracy; it is a system of checks and balances."); *Am. Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020, 1033 (9th Cir. 2025) ("But such a characterization is at best disingenuous, and at worst flatly contradictory to the record."); *Rona v. Trump*, 797 F. Supp. 3d 278, 289 (S.D.N.Y. 2025) ("And regardless, Plaintiffs' First Amendment rights cannot be defeated by the Government's professions of good will."); *CASA, Inc. v. Trump*, 2025 WL 654902, at *2 (4th Cir. Feb. 28, 2025) ("It is hard to overstate the confusion and upheaval that will accompany any implementation of the Executive Order."); *Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, 777 F. Supp. 3d 253, 281 (S.D.N.Y. 2025) ("The defendants' Kafkaesque argument to the contrary would deprive the plaintiffs of any recourse under

24

25-5303 (D.C. Cir. Aug. 20, 2025); *see United States v. Oregon*, No. 6:25-cv-01666-MTK, ECF 73 at 22 (D. Or. Feb. 5, 2026) ("The presumption of regularity that has been previously extended to [the government] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds."). Other courts have also previously concluded that this Administration has lost entitlement to the presumption of regularity *in the context of grand jury proceedings*. *See, e.g.*, *Comey*, 2025 WL 3202693, at *9 ("[T]his unusual series of events, still not fully explained by the prosecutor's declaration, calls into question the presumption of regularity generally associated with grand jury proceedings, and provides another genuine issue the defense may raise to challenge the manner in which the government obtained the indictment."); *United States v. Stewart*, 2025 WL 2754480, at *1 (D.D.C. Sept. 29, 2025) (describing federal prosecutors' conduct as "[a]t a minimum, … unseemly; more than likely it is unlawful. Not to mention, this only deepens the growing mistrust of the actions of prosecutors. That is a sentiment that was once unthinkable, but the irregular is now the regular.").

In light of the foregoing, the grand jury process in question here is not entitled to any presumption of regularity by the Court. Likewise, it should not be afforded the traditional secrecy that accompanies grand juries operating in the normal course.

---

the law."); *Am. Fed'n of Gov't Emps. v. Trump*, 784 F. Supp. 3d 1316, 1327 (N.D. Cal. 2025) ("[D]efendants want the Court to either declare that nine Presidents and twenty-one Congresses did not properly understand the separation of powers, or ignore how the executive branch is implementing large-scale reductions in force and reorganizations."), *injunction vacated, remand granted*, 155. F.4th 1082 (9th Cir. 2025).

25

## CONCLUSION

For the foregoing reasons, Don R. Lemon and Georgia E. Fort respectfully request that the Court order disclosure of transcripts of all grand jury proceedings in this case, pursuant to Federal Rule of Criminal Procedure 6(e).

Dated: February 13, 2026

By: *s/ Matthew S. Ebert*
Matthew S. Ebert
Leita Walker
Isabella Salomão Nascimento
BALLARD SPAHR LLP
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281
ebertm@ballardspahr.com
walkerl@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Kevin C. Riach
THE LAW FIRM OF KEVIN C. RIACH,
PLLC
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com

*Counsel for Georgia Ellyse Fort*

Respectfully submitted,

By: */s/ Abbe David Lowell*
Abbe David Lowell (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*/s/ Joseph H. Thompson*
Joseph H. Thompson
THOMPSON JACOBS PLLC
400 South Fourth Street, Suite 410
Minneapolis, MN 55416
Tel: (612) 416-3322
joe@thompsonjacobs.com

*Counsel for Don R. Lemon*

26