**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-25 (4) (LMP/DLM)**

*United States of America*

v.

*Don Renaldo Lemon (4)*,

Defendant.

**ORAL ARGUMENT REQUESTED**

**DON LEMON'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT
FOR VIOLATING THE FIRST AMENDMENT
AND FAILING TO STATE AN OFFENSE**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

ARGUMENT ........................................................................................................ 5

I.  LEGAL STANDARD ................................................................................. 5

II.  THE SUPERSEDING INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE IT CHARGES CONDUCT PROTECTED BY THE FIRST AMENDMENT ........................................................................................... 6

    A.  The Superseding Indictment Does Not State a FACE Act Violation ............ 8

        1.  The Superseding Indictment Does Not Allege "Threat of Force" ................................................................................. 9

        2.  The Superseding Indictment Does Not Allege "Physical Obstruction" ................................................................. 11

        3.  The Superseding Indictment Fails to Allege Aiding and Abetting Because It Charges Conduct Incident to Journalism ......... 16

    B.  The Superseding Indictment Does Not State a Violation of 18 U.S.C. § 241 ................................................................................................... 19

III.  ANY APPLICATION OF THE FACE ACT OR § 241 TO MR. LEMON'S ALLEGED CONDUCT WOULD VIOLATE THE FIRST AMENDMENT ....... 21

CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Allentown Women's Ctr., Inc. v. Sulpizio*,
   403 F. Supp. 3d 461 (E.D. Pa. 2019)................................................................ 12

*Anderson v. United States*,
   417 U.S. 211 (1974) ......................................................................................... 19

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) ...................................................................................*passim*

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984) ......................................................................................... 14

*Branzburg v. Hayes*,
   408 U.S. 665 (1972) .....................................................................................7, 17

*Cameron v. Johnson*,
   390 U.S. 611 (1968) ......................................................................................... 12

*Chiles v. Salazar*,
   147 S. Ct. 1010 (2026) ...................................................................................... 7

*Counterman v. Colorado*,
   600 U.S. 66 (2023) ........................................................................... 7, 9, 11, 22

*Doe v. Pulaski Cnty. Special Sch. Dist.*,
   306 F.3d 616 (8th Cir. 2002) ............................................................................. 9

*Harris News Agency, Inc. v. Bowers*,
   809 F.3d 411 (8th Cir. 2015) ........................................................................... 17

*In re United States of America*,
   No. 26-01135 (8th Cir. 2026) .......................................................................... 23

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ........................................................................... 14

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ..............................................................................8, 21, 22

*N.Y. ex rel. Spitzer v. Operation Rescue Nat'l*,
   273 F.3d 184 (2d Cir. 2001) ....................................................................... 10, 11

*N.Y. Times v. Sullivan*,
  376 U.S. 254 (1964) ................................................................6, 14, 19

*Phelps-Roper v. Ricketts*,
  867 F.3d 883 (8th Cir. 2017) ............................................................21

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ...........................................................................7

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) .......................................................................7, 17

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995) .........................................................................18

*United States v. Camp*,
  541 F.2d 737 (8th Cir. 1976) ..............................................................5

*United States v. Dinwiddie*,
  76 F.3d 913 (8th Cir. 1996) .......................................................*passim*

*United States v. Fortier*,
  956 F.3d 563 (8th Cir. 2020) .............................................................20

*United States v. Ivey*,
  915 F.2d 380 (8th Cir. 1990) .............................................................17

*United States v. J.H.H.*,
  22 F.3d 821 (8th Cir. 1994) ..........................................................20, 21

*United States v. Lee*,
  6 F.3d 1297 (8th Cir. 1993) ..............................................................20

*United States v. McMillan*,
  946 F. Supp. 1254 (S.D. Miss. 1995) .................................................22

*United States v. Moody*,
  462 F.2d 1307 (8th Cir. 1972) ...........................................................17

*United States v. Olson*,
  262 F.3d 795 (8th Cir. 2001) .......................................................6, 9, 21

*United States v. Zangger*,
  848 F.2d 923 (8th Cir. 1988) ...................................................6, 9, 13, 14

iii

*Virginia v. Black*,
　538 U.S. 343 (2003) ............................................................................................ 9

*Yates v. United States*,
　574 U.S. 528 (2015) .......................................................................................... 12

**Statutes**

18 U.S.C. § 2 ...............................................................................................9, 17

18 U.S.C. § 241 ......................................................................................*passim*

18 U.S.C. § 248 ......................................................................................*passim*

**Constitutional Provisions**

U.S. Const. amend. I........................................................................................ 6

**Rules**

Federal Rule of Criminal Procedure 12(b) ................................................... 5, 23

Federal Rule of Criminal Procedure 7(c) ........................................................ 5

Federal Rule of Evidence 201 ...................................................................... 14

**Other Authorities**

1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (3d ed. 2018)............................ 20

**INTRODUCTION**

In January 2026, few issues garnered more public attention than the surge of immigration enforcement in Minnesota and the civilian demonstrations in response. The superseding indictment alleges that Don Lemon, a prominent journalist, came to Minnesota to meet with a group of demonstrators and report on their effort to "disrupt" a worship service at Cities Church in St. Paul, where they believed an immigration official served as pastor. It further alleges that Mr. Lemon traveled with the demonstrators to the Church, where he livestreamed interviews with the pastor and congregants.

Those allegations state no crime. Nor could they under the First Amendment, which protects both the demonstrators' right to speak and Mr. Lemon's right to report on issues of intense national concern. Even if demonstrators had committed an offense, and they deny they did, that offense did not "remove the First Amendment shield" from Mr. Lemon's reporting on their activities. *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001).

The superseding indictment charges violations of 18 U.S.C. §§ 241 and 248. The Eighth Circuit has narrowly construed both statutes, precisely because it recognizes the burden they would otherwise impose on protected speech. It has construed each statute's reference to "threats" to reach only "true threats" that both the speaker and listener objectively understand to convey an unequivocal and imminent risk of violence. And it has interpreted § 248's reference to "physical obstruction" to prohibit only acts that effectively prevent entry to or exit from a place of worship. The superseding indictment comes nowhere close to meeting those high standards. It alleges only routine chants and

1

expressions of political opinions by the protesters. And it admits that congregants simply left in response.

Even if a demonstrator had made a "true threat" or obstructed a congregant's effort to leave the Church, the superseding indictment could not impute that conduct to Mr. Lemon on a theory of secondary liability. The First Amendment protects journalists' reporting on crimes, which often relate to or are themselves issues of public concern. Whether investigating drug cartels, reporting from the Capitol on January 6th, or documenting the protests and riots that followed George Floyd's murder in Minneapolis, journalists often find themselves at the scene of events that may include criminal conduct. The law has long recognized that bearing witness is not the same as taking part. Prosecuting journalists for aiding and abetting the crimes they simply cover, on the theory that they failed to prevent those crimes or "promoted" the criminals' message, would chill large swaths of critical reporting. It would deter the public's eyes and ears from gathering essential information in real time. It would end much of investigative reporting as we know it.

The superseding indictment fails to allege a violation of 18 U.S.C. §§ 241 and 248. Any effort to stretch those statutes to reach Mr. Lemon's reporting would offend basic First Amendment principles that have guided our nation and courts for generations. The charges against Mr. Lemon should be dismissed with prejudice.

## BACKGROUND

Don Lemon has worked as a journalist for thirty years. He began his career as a news anchor for local stations, moved to NBC News, where he reported for *Today* and *NBC*

2

*Nightly News*, and then joined CNN, where he hosted primetime shows such as *CNN Tonight with Don Lemon*.  In 2024, Mr. Lemon launched his own independent YouTube channel, *The Don Lemon Show*.[1]  As of August 2026, his channel has 1.42 million subscribers.  *Id.*  For comparison, in 2022, all U.S. newspapers *combined* had an estimated circulation of 20.9 million.[2]

The superseding indictment alleges that, on January 18, 2026, Mr. Lemon "began livestreaming on his internet-based show, 'TheDonLemonShow,' where he explained to his audience that he was in Minnesota with an organization that was gearing up for a 'resistance' operation against the Federal Government's immigration policies."  ECF 144 ("Sup. Ind.") at 9.  Mr. Lemon interviewed Defendant Nekima Levy Armstrong, who allegedly "organized the operation" and "explained" its nature and purpose to Mr. Lemon's audience.  *Id.* at 5, 9.  Mr. Lemon then "advised his livestream audience that, 'We're going to head to the operation,'" but did not reveal "operational details that would disclose where" it would occur.  *Id.* at 10.

Shortly thereafter, a group of demonstrators headed to Cities Church in St. Paul (the "Church"), which they believed was "harboring a 'Director of ICE.'"  Sup. Ind. at 2, 11–12.  Demonstrators entered the Church and chanted "'ICE Out!,' 'Hands Up, Don't Shoot!,' and 'Stand Up, Fight Back!.'"  *Id.* at 12.  Mr. Lemon "told his livestream audience about congregants leaving the Church and about a 'young man' who [he] could see was

---

[1] *See* The Don Lemon Show, *YouTube*, https://www.youtube.com/@TheDonLemonShow (last accessed Aug. 6, 2026).

[2] *See* Pew Rsch. Ctr., *Newspapers Fact Sheet* (Nov. 10, 2023), https://www.pewresearch.org/journalism/fact-sheet/newspapers/.

'frightened,' 'scared,' and 'crying.'" *Id.* at 14. He "asked" Ms. Levy Armstrong, "'Who is the person that we should talk to? Is there a pastor or something?'" *Id.* at 15. After identifying the pastor, Mr. Lemon "approached" him, "stood in close proximity," and "peppered him with questions," allegedly to "promote the operation's message." *Id.* at 15. When the interview of the pastor concluded, Mr. Lemon "posted himself at the main door of the Church, where he confronted some congregants . . . to challenge them with 'facts' about U.S. immigration policy." *Id.* at 16.

Based on those allegations, the superseding indictment charges two counts. Count One charges Mr. Lemon with violating 18 U.S.C. § 241 by conspiring with the demonstrators to "oppress, threaten, and intimidate" the congregants and staff of Cities Church "in the free exercise" of their "right of religious freedom." Sup. Ind. at 3–16. Mr. Lemon's producer, Jerome Richardson, and Georgia Fort, another journalist, are also alleged to have joined the conspiracy. *Id.* Count Two charges Mr. Lemon with violating the Freedom of Access to Clinic Entrances Act ("FACE Act"), 18 U.S.C. § 248, by "aiding and abetting . . . use of force, threat of force, and physical obstruction" that "intentionally injured, intimidated, and interfered with" Church congregants' "religious freedom at a place of religious worship." *Id.* at 17–18. It alleges that congregants "perceived" demonstrators' "chants" and "gestures" as "threats of violence," *Id.* at 12, and that Mr. Lemon's questions to congregants "at the main door of the Church . . . physically obstructed them as they tried to exit," *Id.* at 16.

4

**ARGUMENT**

The Court should dismiss both counts of the superseding indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). The allegations in the superseding indictment do not set forth a violation of the FACE Act. Instead, they allege that Mr. Lemon engaged in First Amendment-protected journalism. Even assuming the protestors crossed the line from protected speech to criminal conduct, Mr. Lemon did not commit a crime in covering their actions as a journalist. From war correspondents embedded with the military during the Vietnam War to journalists who entered the U.S. Capitol while covering the January 6 protests, our country has long recognized that the First Amendment protects the rights of the media to cover newsworthy events and that journalistic proximity to crime does not equal complicity. Journalists routinely go where crimes are occurring. To document unfolding events, they must follow crowds, interview participants, and sometimes record criminal conduct in real time. If the mere act of entering the scene of a crime to document it transformed a reporter into a participant, investigative journalism as we know it could not exist.

## I.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to identify the "provision of law" a defendant allegedly violated and provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Those are "separate requirements and not a restatement of one another." *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976). If an indictment's statement of essential facts omits an "essential element of the charge," "the omission is not cured by the

5

bare citation of the charging statute," and the charge must be dismissed as "insufficient." *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988); *see also United States v. Olson*, 262 F.3d 795, 799–800 (8th Cir. 2001) (dismissing bank robbery count for failure to plead facts showing "force and violence" or "intimidation").

## II. THE SUPERSEDING INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE IT CHARGES CONDUCT PROTECTED BY THE FIRST AMENDMENT

The First Amendment prohibits any law from "abridging the freedom of speech, or of the press." U.S. Const. amend. I. That prohibition embodies a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times v. Sullivan*, 376 U.S. 254, 270 (1964). The government cannot "punish speech merely because the speech is forceful or aggressive," because what is "offensive to some is passionate to others." *United States v. Dinwiddie*, 76 F.3d 913, 925 (8th Cir. 1996). "[R]epresentative democracy ceases to exist . . . whenever the constituent can be restrained in any manner from speaking, writing, or publishing his opinions upon any public measure, or upon the conduct of those who may advise or execute it." *N.Y. Times*, 376 U.S. at 297 (Black, J., concurring).

While the First Amendment protects all forms of expression, it applies with special force to the press's "publication of truthful information of public concern." *Bartnicki*, 532 U.S. at 534. In *Bartnicki*, a statute prohibited unauthorized use of illegally intercepted wire communications. *Id.* at 523–24. The Supreme Court, however, held that the First Amendment barred a civil suit under that statute against a journalist, even though it

6

assumed that journalist had "reason to know" that the communication at issue had been illegally intercepted. *Id.* at 517–18, 535. A "stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Id.* That holding reflects the press's "'right to gather information.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). "'[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated.'" *Id.*

Where a facially neutral law "burdens expressive conduct," courts subject it to "intermediate scrutiny," asking "'if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Dinwiddie*, 76 F.3d at 924.[3] A statute's burden on First Amendment rights consists not just of any prohibition on protected speech, but also its "potential to chill, or deter, speech outside [its] boundaries." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023). "To meet the requirement of narrow tailoring, the

---

[3] The government has applied the FACE Act in a discriminatory manner to target specific messages the government deems unfavorable. While it has prosecuted Mr. Lemon for broadcasting a protest against ICE at a church, it has not, for example, filed any charges against ICE officers who use force or threats of force to arrest immigrants during religious services. *See, e.g.*, Christian Broad. Network, *ICE Arrest at Church Sparks Outrage*, YouTube (Dec. 22, 2025), https://www.youtube.com/watch?v=722pl1NlExY. The selective application of the FACE Act to target certain messages likely renders the statute "content-based" as applied to Mr. Lemon and triggers "strict scrutiny." *Chiles v. Salazar*, 147 S. Ct. 1010, 1021 (2026). To satisfy strict scrutiny, the government must "prove its restriction on speech is 'narrowly tailored to serve compelling state interests.'" *Id.* (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Because the government cannot satisfy even intermediate scrutiny, *see* Part II, *infra*, it cannot satisfy strict scrutiny *a fortiori*. The Court thus need not decide which level of scrutiny applies to grant the motion to dismiss.

7

government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

### A.  The Superseding Indictment Does Not State a FACE Act Violation

The FACE Act prohibits "force," "threat of force," or "physical obstruction" that "intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship."   18 U.S.C. § 248(a)(2). Recognizing that a broad prohibition on interfering with religious observance would burden protected speech, Congress narrowly prohibited "only" three types of conduct: "uses of force, threats of force, and physical obstruction." *Dinwiddie*, 76 F.3d at 924.  The FACE Act "provides narrow definitions" relating to "threats of force" and "physical obstruction" to confine those prohibitions to conduct that falls outside the First Amendment's protection.  *Id.* (citing 18 U.S.C. § 248(e)(2) and (4)).   The Act even disclaims any prohibition on "expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment."  18 U.S.C. § 248(d)(1).

The FACE Act's prohibitions do not bar the conduct alleged in the superseding indictment by Mr. Lemon.  The superseding indictment does not even attempt to allege that Mr. Lemon engaged in "force."   And the alleged conduct the superseding indictment characterizes as "threats of force" or "physical obstruction" falls well outside the FACE Act's "narrow definitions" of such terms. *Dinwiddie*, 76 F.3d at 924.  The superseding

indictment thus fails to plead a necessary element, requiring dismissal of the § 248(a)(2) charge. *Olson*, 262 F.3d at 799–800; *Zangger*, 848 F.2d at 925. Nor can Mr. Lemon be prosecuted on a theory of aiding-and-abetting under 18 U.S.C. § 2, because even if others committed a violation, the First Amendment shields Mr. Lemon's reporting about their conduct.

### 1. The Superseding Indictment Does Not Allege "Threat of Force"

The FACE Act defines "intimidate" to mean placing another in "reasonable apprehension of bodily harm." 18 U.S.C. § 248(e)(3). That definition limits the prohibition on "threats of force" to "true threats," *i.e.*, "'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman*, 600 U.S. at 74 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)); *Dinwiddie*, 76 F.3d at 925. "True threats subject individuals to 'fear of violence.'" *Counterman*, 600 U.S. at 74.

Before 2023, courts "divided about [] whether the First Amendment requires proof of a defendant's subjective mindset in true-threat cases." *Counterman*, 600 U.S. at 72; *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622 (8th Cir. 2002) (en banc) (describing Circuit split). *Counterman* resolved that division by holding that the First Amendment prohibits prosecution of true threats unless a speaker is "aware 'that others could regard his statements as' threatening violence and 'delivers them anyway.'" *Counterman*, 600 U.S. at 79. The Supreme Court required proof of such awareness because doing so "reduces the prospect of chilling fully protected expression," even if it also "shield[s] some otherwise proscribable (here, threatening) speech" from prosecution. *Id.* at 75.

9

The superseding indictment here does not allege any "true threat," much less a "true threat" by Mr. Lemon. Only two paragraphs purport to identify "threats" at all. One alleges that, when demonstrators chanted " 'ICE Out!,' 'Hands Up, Don't Shoot!,' and 'Stand Up, Fight Back!,'" congregants "perceived" the chants and unspecified "gestures" as "threats of violence and a potential prelude to a mass shooting." Sup. Ind. at 12. But those generic slogans (not attributed to Mr. Lemon) can be heard at thousands of peaceful protests and hardly qualify as true threats of physical violence. They are not so "'unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution.'" *N.Y. ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 196–97 (2d Cir. 2001) (statement that "killing babies is no different than killing doctors" not a true threat). Indeed, "Hands Up, Don't Shoot!" is an expression of non-violence. A reasonable person who hears "Hands Up, Don't Shoot!" would not believe that the *speaker* has an unconditional and imminent intention to shoot.

The superseding indictment's second paragraph addressing perceived threats adds only that demonstrators "physically occup[ied] most of the main aisle and rows of chairs near the front of the Church" while "chanting and yelling." Sup. Ind. at 12–13. But that addition says nothing that would indicate a true threat. Even peaceful demonstrators must "physically occup[y]" space. And, as discussed below, the mere allegation that protestors were present in the Church is insufficient to state a FACE Act violation.

While the superseding indictment alleges that congregants "perceived . . . threats of violence," Sup. Ind. at 12, it cannot rely on such perceptions to establish a true threat. "[E]xcessive reliance on the reaction of recipients would endanger First Amendment

10

values." *Spitzer*, 273 F.3d at 197. *Counterman* requires allegations that a speaker knows "'others could regard his statements as' threatening violence and 'delivers them anyway.'" *Counterman*, 600 U.S. at 79. The superseding indictment does not come close. It alleges that Mr. Lemon "told his livestream audience about … a 'young man' who [Mr. Lemon] could see was 'frightened,' 'scared,' and 'crying.'" Sup. Ind. at 14. But it never alleges that the "young man" was "frightened" or "scared" of *threatened violence*, as opposed to disruption, disagreement, and criticism. *Spitzer*, 273 F.3d at 197 (noting that "potentially misconstruing the ultimate source of the fear" would "endanger First Amendment values"). Even if it had, Mr. Lemon "told his livestream audience" about the young man *after* the alleged threats, not before. *Compare* Sup. Ind. at 12–13, *with id.* at 14. Nothing suggests that Mr. Lemon was aware others would fear violence and delivered threats anyway. *Counterman*, 600 U.S. at 79. To the contrary, the superseding indictment does not allege Mr. Lemon made threats at all.

### 2. The Superseding Indictment Does Not Allege "Physical Obstruction"

Nor does the superseding indictment allege Mr. Lemon engaged in "physical obstruction." The FACE Act defines "physical obstruction" to mean "rendering impassable ingress to or egress from … a place of religious worship," or "rendering passage to or from such a … place of religious worship unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). That definition tracks Supreme Court precedent upholding prohibitions on "'picketing or mass demonstrations in such a manner as to *obstruct* or unreasonably *interfere with* free ingress to or egress from any public

11

premises.'"  *Dinwiddie*, 76 F.3d at 924 (quoting *Cameron v. Johnson*, 390 U.S. 611, 612 n.1 (1968) (emphasis added)).  "Impassable" means "impossible to travel along or over." *Impassable*, *Concise Oxford English Dictionary* 713 (12th ed. 2011); *see also Impassable*, Merriam-Webster,   https://www.merriam-webster.com/dictionary/impassable   (last accessed Aug. 6, 2026) ("incapable of being passed, traveled, crossed, or surmounted"). Under the *noscitur a sociis* canon, Section 248(e)(4)'s use of the phrase "unreasonably difficult or hazardous" must be "known by the company it keeps" to avoid ascribing a "meaning so broad that it is inconsistent with its accompanying words."  *Yates v. United States*, 574 U.S. 528, 543 (2015).  Considered alongside "impassable," the phrase "unreasonably difficult or hazardous" necessarily refers to conditions that would deter a reasonable person from passing, even if they do not technically render passage impossible. A broader interpretation of "unreasonably difficult" would necessarily capture any condition that prevented entry or exit and thus "render superfluous" the statute's use of "impassable."  *Id.*; *see also Allentown Women's Ctr., Inc. v. Sulpizio*, 403 F. Supp. 3d 461, 471 (E.D. Pa. 2019) (finding no physical obstruction in civil case where repeat demonstrator "will get out of the way, but he does so slowly.").

The superseding indictment does not allege that Mr. Lemon rendered ingress or egress to Cities Church "impassable," "unreasonably difficult or hazardous."  18 U.S.C. § 248(e)(4).  While the superseding indictment repeatedly characterizes Mr. Lemon's alleged conduct as "physical obstruction," none of that conduct would have any bearing on a reasonable person's ability to exit the Church.  It accuses Mr. Lemon of "physically occupying" the Church, standing in "close proximity to the pastor" and "pepper[ing] him

12

with questions to promote the operation's message," and "confronting" congregants as they "tried to exit the Church building to challenge them with 'facts.'" Sup. Ind. at 12–16. But occupying space and inviting debate does not render exits "impassable," "hazardous," or even "difficult." 18 U.S.C. § 248(e)(4). Far from it. Such "expressive conduct" is the hallmark of "peaceful demonstration," falling well within § 248(d)(1)'s express disclaimer. The superseding indictment's characterization of Mr. Lemon's speech as "forceful or aggressive" does not "permit the government to punish" it, because what is "offensive to some is passionate to others." *Dinwiddie*, 76 F.3d at 925. And, again, the First Amendment protects Mr. Lemon's ability to cover the protest as a journalist, regardless of whether someone agrees with the substance of his coverage.

The Eighth Circuit's decision in *Zangger* underscores why dismissal is required. There, the indictment charged "mailing a videotape showing Zangger masturbating," but failed to "assert the videotape was obscene." *Zangger*, 848 F.2d at 925. Because the indictment never "specifically" referred to obscenity or "any 'words of similar import,'" it failed to allege an "essential element of the offense." *Id.* So too here. Nowhere does the superseding indictment allege—either expressly or by words of similar import—that as a result of any of Mr. Lemon's conduct ingress or egress to Cities Church was "impassable," "unreasonably difficult or hazardous." To the contrary, the superseding indictment acknowledges that "congregants" could exit the Church, explicitly alleging that "most" of them "fle[d]." Sup. Ind. at 15. And while the superseding indictment alleges that unspecified "agitators" (not Mr. Lemon) made one passage (not an exit) "difficult or hazardous," the sole alleged effect was that congregants took "alternative routes in or

13

around the Church." *Id.* at 16.  That allegation, which does not apply to Mr. Lemon, again confirms that congregants could enter, exit, and even traverse the Church without significant difficulty.  The superseding indictment thus not only fails to allege an "essential element of the offense"—it expressly alleges that "essential element" was not met. *Zangger*, 848 F.2d at 925.

The superseding indictment does not allege conduct that meets § 248(e)(4)'s definition of "physical obstruction" because it cannot.  The superseding indictment admits that Mr. Lemon "livestream[ed]" all events on "his internet-based show."  Sup. Ind. at 9. That livestream remains available online,[4] and it plainly demonstrates that Mr. Lemon did not render any Church exit "impassable," "unreasonably difficult or hazardous," 18 U.S.C. § 248(e)(4).  If the Court has any questions about the sufficiency of the superseding indictment's allegations, it should take judicial notice of the livestream under Federal Rule of Evidence 201.  Having repeatedly referenced Mr. Lemon's livestream in the superseding indictment, the government cannot "reasonabl[y] dispute" that its contents can be "accurately and readily determined" from the website where the livestream occurred.  Fed. R. Evid. 201.[5]  The livestream shows that the superseding indictment's allegations are not

---

[4] *See* Don Lemon, *Don Live on the Scene: Live From Minneapolis*, YouTube (Jan. 18, 2026), https://www.youtube.com/watch?v=v4ctuhv-cck.

[5] The Supreme Court has "repeatedly held" that courts have "an obligation to 'make an independent examination of the whole record'" when resolving First Amendment issues.  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984); *N.Y. Times v. Sullivan*, 376 U.S. 254, 285 (1964) (courts must "review the evidence" to determine "line between speech unconditionally guaranteed and speech which may be legitimately regulated").  Such review necessarily permits consideration of a video that the superseding indictment repeatedly cites.  In civil cases, courts treat documents referenced in a complaint as "part of the complaint itself" to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja v.*

14

only facially insufficient, but also false.  To take just one example, the superseding indictment alleges that Mr. Lemon and others "surrounded" the Church's pastor and "physically obstructed his freedom of movement."  Sup. Ind. at 15.  The livestream, however, shows that the pastor was not surrounded:



In fact, he left the encounter after a little over a minute, confirming the lack of any obstruction:

---

*Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Such artful omission is even less tolerable in a criminal indictment given the substantial liberty interests at stake.

[6] *See* Don Lemon, *Don Live on the Scene: Live From Minneapolis*, YouTube, at 51:30 (Jan. 18, 2026), https://www.youtube.com/watch?v=v4ctuhv-cck&t=3787s.



7

### 3. The Superseding Indictment Fails to Allege Aiding and Abetting Because It Charges Conduct Incident to Journalism

Finally, the superseding indictment does not state any offense by Mr. Lemon for aiding or abetting a FACE Act violation by other defendants. Even assuming that some other defendant made a true threat or engaged in physical obstruction, *but see* pp. 9–11, *supra*, Mr. Lemon neither aided nor abetted that violation because he simply gathered and published information, the very essence of journalism. A "stranger's illegal conduct does not suffice to remove the First Amendment shield from speech about a matter of public concern." *Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001). Permitting prosecution of such "speech" on the ground that it aided and abetted the "stranger's illegal conduct" would leave that "First Amendment shield" in tatters. The "Federal Government's immigration policies" in Minnesota in January 2026 and demonstrations in response to those policies

---

[7] *Id.* at 52:41.

16

were matters of significant public interest. Mr. Lemon had an unquestionable First Amendment right to seek out and publish news on that topic, including the protest at Cities Church. *Richmond Newspapers*, 448 U.S. at 576.

"To establish aiding and abetting liability under 18 U.S.C. § 2, the government must prove that the defendant had a 'purposeful attitude,' defined as affirmative participation which at least encourages the perpetrator." *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990). "[A]llowing someone to commit a crime—in the sense of not stopping it—is not the same as committing it." *Harris News Agency, Inc. v. Bowers*, 809 F.3d 411, 413 (8th Cir. 2015). Knowledge of participation in an "illegal transaction" is an "essential element of the offense." *United States v. Moody*, 462 F.2d 1307, 1308 (8th Cir. 1972).

The superseding indictment does not allege that Mr. Lemon had a "purposeful attitude" to encourage any true threat or physical obstruction by another defendant. *Ivey*, 915 F.2d at 384. It alleges that Mr. Lemon "took steps to maintain operational secrecy" by avoiding disclosure of the "target of the operation." Sup. Ind. at 9. But that is basic journalism. Absent a subpoena, the press is not "forbidden or restricted" from maintaining "confidential[ity]." *Branzburg*, 408 U.S. at 682. Journalists must do so every day as part of "seeking out the news." *Id.* At most, declining to reveal where the protest would occur had the effect of "not stopping it," which is insufficient to show aiding and abetting. *Harris News Agency*, 809 F.3d at 413. To also state the obvious, the government does not allege, nor is there any evidence to support the idea, that knowing where a protest would occur gave Mr. Lemon any notion of what the protesters would do there, much less that they might commit a crime he would be accused of aiding and abetting.

17

Nor can Mr. Lemon's journalism be criminalized on the ground that it "promote[d] the operation's message." Sup. Ind. at 15. Any prosecution based on the "message" Mr. Lemon "promoted" falters at the outset by discriminating based on viewpoint. "Discrimination against speech because of its message" is an "egregious form of content discrimination." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). The "government *must* abstain" from it. *Id.* (emphasis added). The superseding indictment could not charge a journalist who criticized the demonstrators' message with aiding and abetting. So, neither can it charge Mr. Lemon based on an allegation that he "promoted" it.

More broadly, the First Amendment does not permit prosecution for publishing information simply because it might encourage misconduct by third parties. The Supreme Court's decision in *Bartnicki* makes that clear. 532 U.S. at 529. There, the Court assumed that a recorded conversation had been "illegally intercepted." *Id.* A federal statute prohibited any "use" of that recording, and the government argued that prohibition was necessary to promote its "interest in removing an incentive for parties to intercept private conversations." *Id.* But the Supreme Court held that interest could not justify imposing "sanctions on the publication of truthful information of public concern." *Id.* at 534. So too here. Even assuming that another defendant violated the FACE Act, the government's interest in deterring that violation cannot justify sanctions on Mr. Lemon's publication of information about protests in Minnesota, a subject of intense national interest.

The superseding indictment's aiding-and-abetting charge against Mr. Lemon threatens to chill a broad swath of protected journalism. Every day, journalists investigate,

18

observe, and report on actions that may break the law, ranging from violence to drug trafficking, shady financial dealings, and political corruption.    Reporters routinely interview people who have been accused of crimes (or even acts of terrorism) but have not yet been apprehended.  Sometimes, they do so at locations of those being accused that may not be known to the public or law enforcement.  That does not make those reporters aiders and abettors of the offense.  The specter that journalists could be criminally charged with aiding-and-abetting the crimes they report—either because they revealed too little or "promoted" the criminals' message—would wreak havoc on public discourse, depriving the public of vital information.  The Supreme Court has held that the First Amendment bars *civil* suits for libel against journalists unless they acted with "actual malice," *i.e.*, knowledge or reckless disregard that they published falsities.  *N.Y. Times*, 376 U.S. at 279–80.  No less a showing should be required for a *criminal* charge of aiding and abetting. Because the superseding indictment nowhere alleges that Mr. Lemon knowingly or recklessly encouraged any demonstrator to make a "true threat" of violence or "physically obstruct" exit from Cities Church, the § 2 charge must be dismissed.

### B.  The Superseding Indictment Does Not State a Violation of 18 U.S.C. § 241

Section 241 prohibits "two or more persons" from conspiring to "injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution."  18 U.S.C. § 241.  Any prosecution must "show that the offender acted with a specific intent to interfere with the federal rights in question."  *Anderson v. United States*, 417 U.S. 211, 223 (1974).  Specific intent "requires

19

a mental state 'above and beyond' the intent to perform one of the acts listed in the statute." *United States v. Fortier*, 956 F.3d 563, 567 (8th Cir. 2020) (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e), at 476–77 (3d ed. 2018)).  It requires a showing that one of the defendant's "dominant purposes" is the one the statute prohibits.  *Id.*  Where a prosecution targets expressive conduct, moreover, the First Amendment requires a showing that the defendant acted "with the intent to advocate the use of force or violence and [was] likely to produce such action" or with intent "to threaten" listeners and cause them "to reasonably fear the use of imminent force of violence."  *United States v. J.H.H.*, 22 F.3d 821, 827 (8th Cir. 1994) (quoting *United States v. Lee*, 6 F.3d 1297, 1304 (8th Cir. 1993) (Gibson, *J.*, concurring)).  In other words, the First Amendment permits prosecution of expressive conduct under § 241 only if that conduct amounts to a "true threat, which is not protected."  *Id.* at 832 (Lay, *J.*, concurring).

The superseding indictment does not allege a violation of § 241.  It does not allege a "true threat" by anyone, much less by Mr. Lemon, for the reasons already explained.  *See* pp. 9–11, *supra*.  But prosecution under § 241 requires even more than a "true threat."  It requires allegations of "intent" to "advocate the use of force or violence" or "to threaten" listeners.  *J.H.H.*, 22 F.3d at 826 (quoting *Lee*, 6 F.3d at 1304 (Gibson, *J.*, concurring)). The superseding indictment does not just fail to allege such intent.  It disclaims it.  It alleges Mr. Lemon "admitted knowing that the 'whole point of [the operation] is to disrupt.'"  Sup. Ind. at 15; *see id.* at 9–10 (alleging Ms. Armstrong stated, "'we disrupt business as usual'"). Disruption is neither violence nor even the threat of violence.  Noisy construction, a power outage, or even an unexpected rendition of "Kumbaya" can all "disrupt" a worship service.

20

But none are violent or even threatening. Just as in *Olson*, where referring to a bank teller as a "victim" did not show "force or intimidation," allegations of an intention to "disrupt" do not show any intention to advocate or threaten violence. 262 F.3d at 799–800. In *J.H.H.*, the Eighth Circuit recognized that cross-burning, although a "historical" predecessor for "lynching, murder, [and] assault," might not show the required "specific intent to intimidate." 22 F.3d at 826, 829. That conclusion applies many times over to disruptive chants and requires dismissal of the § 241 charge.

### III. ANY APPLICATION OF THE FACE ACT OR § 241 TO MR. LEMON'S ALLEGED CONDUCT WOULD VIOLATE THE FIRST AMENDMENT

Finally, any application of the FACE Act or Section 241 to Mr. Lemon violates the First Amendment. *See Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017) ("An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court."). "The First Amendment . . . requires a court . . . that is applying FACE's prohibition . . . to differentiate between 'true threats,' and protected speech." *Dinwiddie*, 76 F.3d at 925 (citation omitted). There can be no serious dispute that the superseding indictment burdens—indeed, *targets*—Mr. Lemon's protected speech. It bases the charges on allegations about what Mr. Lemon "explained to his audience," "assured" Ms. Levy Armstrong, "advised his audience," "replied" to his producer, "told his livestream audience," "acknowledged," and "asked." Sup. Ind. at 9–16. It invokes the "questions" with which he "peppered" the pastor and the "facts" with which he "confronted" congregants. *Id.* Every one of those allegations concerns speech. Not one recounts a threat or obstruction. Prosecuting that speech is not merely a burden. *McCullen*, 573 U.S.

21

at 486–87.  It is the harshest form of sanction the law can impose.  Criminal prosecution explicitly seeks to deter similar conduct by others, maximizing the chilling effect the First Amendment prohibits.  *Counterman*, 600 U.S. at 75.

The government could easily further any legitimate interest through "less restrictive alternatives."  *McCullen*, 573 U.S. at 494.  If the government wishes to protect Cities Church or other places of worship from future disruption, the FACE Act authorizes the Attorney General to commence a civil action seeking preliminary or permanent injunctive relief.  18 U.S.C. § 248(c)(2).  The Supreme Court has noted the "First Amendment virtues of targeted injunctions," which can be "tailor[ed]" to restrict "no more speech than necessary."  *McCullen*, 573 U.S. at 492.  Indeed, the government pursued civil relief in cases such as *Dinwiddie* even though the defendant had "used physical force" and made true threats.  76 F.3d at 917; *see also United States v. McMillan*, 946 F. Supp. 1254, 1264 (S.D. Miss. 1995).  The government has no credible argument that injunctive relief sufficed to address the defendant's use of "physical force" in *Dinwiddie*, but could not here, if properly written, further its interest in prohibiting Mr. Lemon from reporting on other demonstrators' chants.

Ultimately, the First Amendment violation is plain.  The superseding indictment does not impose an incidental burden on Mr. Lemon's speech to promote legitimate interests that would otherwise languish.  It targets Mr. Lemon's speech, on a critical public issue, without any showing that the government "seriously undertook to address the problem with less intrusive tools readily available to it."  *McCullen*, 573 U.S. at 492.  The clarity of the First Amendment violation explains why, when presented with a criminal

22

complaint with substantially identical allegations, this Court found a lack of probable cause to prosecute Mr. Lemon under 18 U.S.C. §§ 241 and 248. *See In re United States of America*, No. 26-01135, Second Letter from Chief Judge Schiltz at 1 (8th Cir. Jan. 23, 2026) (finding "no evidence" that "a journalist," *i.e.*, Mr. Lemon, "engaged in any criminal behavior or conspired to do so"). The government may have taken its allegations to a different forum to obtain the superseding indictment. But the First Amendment has not changed.

## CONCLUSION

The First Amendment forbids prosecuting Mr. Lemon for reporting on matters of public concern. That principle, and the superseding indictment's broader failure to state an offense, require dismissal under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

Dated: August 7, 2026

Respectfully submitted,

/s/ *Joseph H. Thompson*
Joseph H. Thompson (#0343031)
THOMPSON JACOBS PLLC
220 N. Second Street, Suite 220
Minneapolis, MN 55401
Tel: (612) 416-3322
joe@thompsonjacobs.com

By: /s/ *Abbe David Lowell*
Abbe David Lowell (*admitted pro hac vice*)
Caleb Hayes-Deats (*admitted pro hac vice*)
David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
CHayes-Deats@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Counsel for Don R. Lemon*