**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal Case No. 26-25 (4) (LMP/DLM)**

|  |  |
|---|---|
| *United States of America* | |
| v. | **ORAL ARGUMENT REQUESTED** |
| *Don Renaldo Lemon (4)*, | |
| Defendant. | |

**DON LEMON'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT**
**FOR STATUTORY AND CONSTITUTIONAL DEFICIENCIES**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT...................................................................................................... 1

I.  SECTION 248(A)(2) IS AN UNCONSTITUTIONAL EXERCISE OF CONGRESSIONAL POWER UNLESS READ TO INCLUDE A STATE ACTION REQUIREMENT. ................................................................ 2

    A.  Section 248(a)(2) Is an Invalid Exercise of Commerce Clause Authority............................................................................................ 4

        1.  Section 248(a)(2) does not fall within the first two *Lopez* categories............................................................................... 4

        2.  Section 248(a)(2) does not "substantially affect" interstate commerce. ............................................................................. 5

            i.  Section 248(a)(2) regulates intrastate, non-economic conduct. ................................................................ 6

            ii.  The absence of a jurisdictional element or congressional findings confines Section 248(a)(2) to intrastate, non-economic conduct....................................................... 10

            iii.  Any relationship to interstate commerce is highly attenuated............................................................... 13

    B.  Absent a State Action Requirement, Section 248(a)(2) Cannot Be Grounded in Section 5 of the Fourteenth Amendment............................... 15

II.  THE SECTION 241 CHARGE LACKS A VALID FEDERAL RIGHT. ............. 17

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Bays v. City of Fairborn*,
668 F.3d 814 (6th Cir. 2012) ....................................................................................... 18

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) ..................................................................................................... 19

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ..................................................................................................... 15

*Civil Rights Cases*,
109 U.S. 3 (1883) .................................................................................................... 15, 16

*Gonzales v. Raich*,
545 U.S. 1 (2005) .......................................................................................................... 7

*Hoekman v. Educ. Minnesota*,
41 F.4th 969 (8th Cir. 2022) .................................................................................... 16, 18

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2d Cir. 2021) ................................................................................ 5, 6, 10, 12

*Pursley v. City of Fayetteville, Ark.*,
820 F.2d 951 (8th Cir. 1987) ......................................................................................... 3

*Tilton v. Richardson*,
6 F.3d 683 (10th Cir. 1993) .......................................................................................... 19

*Torres v. Lynch*,
578 U.S. 452 (2016) ..................................................................................................... 10

*United Brotherhood of Carpenters v. Scott*,
463 U.S. 825 (1983) ..................................................................................................... 18

*United States v. Anderson*,
771 F.3d 1064 (8th Cir. 2014) ....................................................................................... 6

*United States v. Bird*,
124 F.3d 667 (5th Cir. 1997) ..................................................................................... 4, 11

*United States v. Bowers*,
495 F. Supp. 3d 362 (W.D. Pa. 2020) ......................................................................... 13

*United States v. Covington*,
395 U.S. 57 (1969) ................................................................................ 2

*United States v. Dinwiddie*,
76 F.3d 913 (8th Cir. 1996) ................................................................ 5, 9

*United States v. Guest*,
383 U.S. 745 (1966) ............................................................................ 19

*United States v. Haney*,
264 F.3d 1161 (10th Cir. 2001) ............................................................ 3

*United States v. Hari*,
2019 WL 7838282 (D. Minn. Sept. 17, 2019) .................................... 12

*United States v. Hari*,
67 F.4th 903 (8th Cir. 2023) ......................................................... 3, 9, 12

*United States v. Hill*,
927 F.3d 188 (4th Cir. 2019) .............................................................. 13

*United States v. Howell*,
552 F.3d 709 (8th Cir. 2009) ................................................................ 5

*United States v. Kozminski*,
487 U.S. 931 (1988) ............................................................................ 17

*United States v. Lanier*,
520 U.S. 259 (1997) ............................................................................ 17

*United States v. Lopez*,
514 U.S. 549 (1995) ...................................................................... *passim*

*United States v. McKee*,
68 F.4th 1100 (8th Cir. 2023) ............................................................. 10

*United States v. Morales-de Jesus*,
372 F.3d 6 (1st Cir. 2004) .................................................................... 9

*United States v. Morrison*,
529 U.S. 598 (2000) ...................................................................... *passim*

*United States v. Price*,
383 U.S. 787 (1966) ............................................................................ 19

*United States v. Pugh,*
  90 F.4th 1318 (11th Cir. 2024) ................................................................................ 5

*United States v. Riddle,*
  249 F.3d 529 (6th Cir. 2001) ................................................................................... 3

*United States v. Roof,*
  10 F.4th 314 (4th Cir. 2021) ............................................................................. 9, 12

*United States v. Turner,*
  842 F.3d 602 (8th Cir. 2016) ................................................................................... 1

*Wickard v. Filburn,*
  317 U.S. 111 (1942) ................................................................................................. 7

## Statutes

18 U.S.C. § 241 ........................................................................................... *passim*

18 U.S.C. § 247 ............................................................................................ 3, 5, 12, 13

18 U.S.C. § 248 ........................................................................................... *passim*

18 U.S.C. § 844 ..................................................................................................... 13

42 U.S.C. § 1985 ............................................................................................... 18, 19

Pub. L. No. 103-259, 108 Stat. 694 (1994) ................................................................ 3, 11

## Constitutional Provisions

U.S. Const. art. I, § 8, cl. 3 ............................................................................................ 4

## Rules

Federal Rule of Criminal Procedure 12(b) .......................................................................... 1

## Other Authorities

140 Cong. Rec. H3117.................................................................................................... 11

140 Cong. Rec. H3126 ................................................................................................... 11

140 Cong. Rec. S5596 .................................................................................................... 11

H.R. Rep. No. 104-621 ................................................................................................ 12

*The Subjects of the Constitution*,
    62 Stan. L. Rev. 1209 (2010) ................................................................................. 3

## INTRODUCTION

Don Lemon was indicted for exercising his First Amendment right to report on a protest at Cities Church in St. Paul. For his constitutionally protected actions, Mr. Lemon was charged under the Freedom of Access to Clinic Entrances Act ("FACE Act")'s religious worship provision, 18 U.S.C. § 248(a)(2), and with Conspiracy Against Rights, 18 U.S.C. § 241.

These charges are fundamentally flawed and must be dismissed. Section 248(a)(2) is an invalid exercise of Congress's power under the Commerce Clause because the regulated conduct is intrastate, non-economic, and lacks any non-attenuated nexus to interstate commerce. Section 248(a)(2) also cannot be sustained by Congress's power under Section 5 of the Fourteenth Amendment, unless it is read to incorporate the First Amendment's state action requirement. As the government has not pled state action in the superseding indictment, the Section 248(a)(2) charge against Mr. Lemon must be dismissed in either scenario. And since neither the FACE Act nor the First Amendment can serve as Section 241's predicate federal right absent state action, the remaining charge must be dismissed as well. This Court should dismiss both Counts.

## ARGUMENT[1]

The charges against Mr. Lemon must be dismissed under Federal Rule of Criminal Procedure 12(b)(1). *See United States v. Turner*, 842 F.3d 602, 604–05 (8th Cir. 2016) ("A motion is capable of pretrial determination 'if trial of the facts surrounding the commission

---

[1] For efficiency, this motion incorporates the factual background section in Mr. Lemon's Motion to Dismiss the Superseding Indictment for Violating the First Amendment and Failing to State an Offense, ECF 609, pp. 2–4, filed concurrently with this motion.

of the alleged offense would be of no assistance in determining the validity' of the motion.") (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

The superseding indictment charges Mr. Lemon with Conspiracy Against Rights, 18 U.S.C. § 241 (Count I), and with a violation of the FACE Act's religious worship provision, 18 U.S.C. § 248(a)(2) (Count II). Though listed as Count II, the invalidity of the Section 248(a)(2) charge is fatal to the Section 241 charge in Count I. The Section 241 charge relies on Section 248(a)(2) and the First Amendment as alternative sources of the underlying federal right. But the First Amendment guards against state action alone, and Section 248(a)(2) is either an unconstitutional expansion of congressional power or, like the First Amendment, requires state action. Because the government has not pled state action in the superseding indictment, both the Section 248(a)(2) charge and the Section 241 charge must fail.[2]

## I.     SECTION 248(A)(2) IS AN UNCONSTITUTIONAL EXERCISE OF CONGRESSIONAL POWER UNLESS READ TO INCLUDE A STATE ACTION REQUIREMENT.

Count II of the superseding indictment charges Mr. Lemon with violating the FACE Act's religious worship provision, Section 248(a)(2), which prohibits:

> [B]y force or threat of force or by physical obstruction, intentionally injur[ing], intimidat[ing] or interfer[ing] with or attempt[ing] to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship[.]

---

[2] Section 248(a)(2)'s statutory and constitutional deficiencies invalidate any criminal charge predicated on this statutory provision, so any charge for aiding and abetting under § 2 must be dismissed as well.

2

18 U.S.C. § 248(a)(2). Like "[e]very law enacted by Congress," Section 248(a)(2) "must be based on one or more of [Congress's] powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). Section 248(a)(2) is not.

Congress invoked two sources of legislative power in enacting the FACE Act in its entirety: its power to regulate interstate commerce under Article I, Section 8, and its general remedial power under Section 5 of the Fourteenth Amendment. *See* Pub. L. No. 103-259, 108 Stat. 694 (1994). Neither source provides Congress the authority to enact Section 248(a)(2). The Commerce Clause does not permit Congress to regulate the intrastate, non-economic conduct criminalized in Section 248(a)(2). *See United States v. Lopez*, 514 U.S. 549, 567 (1995). And Section 5 of the Fourteenth Amendment cannot support Section 248(a)(2) unless the provision is read to contain a state action requirement, under which it would not apply to Mr. Lemon at all. *See Morrison*, 529 U.S. at 619.[3]

---

[3] Mr. Lemon's challenge to Section 248(a)(2) is properly construed as a facial challenge. Section 248(a)(2), unlike the statute the Eighth Circuit considered in *United States v. Hari*, 67 F.4th 903, 908 (8th Cir. 2023)—18 U.S.C. § 247—does not have a jurisdictional element and therefore cannot be analyzed on a case-by-case basis. *See Lopez*, 514 U.S. at 561; *United States v. Riddle*, 249 F.3d 529, 539 (6th Cir. 2001) ("Any as-applied challenge is irrelevant since [the statute] does not contain a jurisdictional element and the prosecution need not put on evidence of a particular connection with interstate commerce."); *cf. United States v. Haney*, 264 F.3d 1161, 1166–67 (10th Cir. 2001) (finding that the lack of a jurisdictional element in § 922(o) rendered it susceptible to a facial challenge). "If a statute is constitutionally invalid on its face, it may be judicially examined regardless of its particular application to specific facts." *Pursley v. City of Fayetteville, Ark.*, 820 F.2d 951, 957 (8th Cir. 1987) (citation omitted); *see* Nicholas Quinn Rosenkranz, *The Subjects of the Constitution*, 62 Stan. L. Rev. 1209, 1276 (2010) ("The specific facts of enforcement cannot matter" in a Commerce Clause challenge because "the constitutional violation is complete before those facts arise. It cannot matter whether [the] gun travelled in interstate commerce, or whether [the defendant] came to school to sell it to an international cartel, because Congress violated the Constitution long before.").

Consequently, Section 248(a)(2) is either unconstitutional, or the government has failed to allege a necessary element in the superseding indictment. Either way, Count II must be dismissed.

### A.    Section 248(a)(2) Is an Invalid Exercise of Commerce Clause Authority.

The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3. The Supreme Court has held that this power is confined to three regulable categories: (1) the "use of the channels of interstate commerce"; (2) the "instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "those activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558–59. Because Section 248(a)(2) does not fit within any of the three categories, it cannot be sustained as a permissible exercise of Congress's Commerce Clause power.

### 1.    Section 248(a)(2) does not fall within the first two *Lopez* categories.

Any argument that Section 248(a)(2) is authorized under the first two *Lopez* categories is "quickly disposed of." *Lopez*, 514 U.S. at 559. Section 248(a)(2) does not fall into the first category, which permits Congress to regulate the "use of the channels of interstate commerce." *Id.* at 558. It is not a regulation of the use of the channels of interstate commerce, such as railroads or waterways, nor is it an attempt to prohibit the interstate transportation of a commodity through such channels. *See United States v. Bird*, 124 F.3d 667, 673 (5th Cir. 1997) (finding that the first *Lopez* category "is plainly not applicable" to the FACE Act as a whole).

4

Nor is Section 248(a)(2) authorized under the second category, as a regulation in which Congress has sought to protect "persons or things in interstate commerce." *Lopez*, 514 U.S. at 558. Section 248(a)(2) regulates the use of force, threats of force, and physical obstruction directed at worshippers at houses of religious worship—quintessentially local activity. Unlike the reproductive health provisions—which have extensively documented ties to interstate commercial activity, *see United States v. Dinwiddie*, 76 F.3d 913, 919 (8th Cir. 1996)—neither text, history, nor logic ties Section 248(a)(2) to persons, things, or instrumentalities of interstate commerce.[4] Consequently, the conduct regulated by Section 248(a)(2), "violence against worshippers at places of religious worship," cannot "reasonably pertain" to either of the first two *Lopez* categories. *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 63 (2d Cir. 2021) (Walker, J., concurring).

### 2. Section 248(a)(2) does not "substantially affect" interstate commerce.

The third *Lopez* category does not authorize Section 248(a)(2) because the provision does not substantially affect interstate commerce. Courts assess four factors to make this determination: "(1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element linking its scope in some way to interstate commerce; (3) whether Congress made express findings regarding the effects of the

---

[4] Section 248(a)(2)'s lack of a "jurisdictional 'hook'" forecloses any argument that it fits "under the first two prongs of *Lopez*." *United States v. Howell*, 552 F.3d 709, 715 (8th Cir. 2009). The presence of a jurisdictional element limiting a statute's reach to conduct that affects "the movement of any article or commodity in commerce" has allowed courts to sustain statutes under the first two *Lopez* categories. *See United States v. Pugh*, 90 F.4th 1318, 1326 (11th Cir. 2024). The FACE Act, unlike 18 U.S.C. § 247, the statute the Eighth Circuit considered in *Hari*, contains no such jurisdictional hook that could bring the statute within the first two prongs of *Lopez*.

regulated activity on interstate commerce; and (4) the attenuation of the link between regulated activity and interstate commerce." *United States v. Anderson*, 771 F.3d 1064, 1067–68 (8th Cir. 2014) (citing *Morrison*, 529 U.S. at 611–12).

Each of these four factors cuts against upholding Section 248(a)(2). The activity regulated by Section 248(a)(2)—the use of force, threatened force, or physical obstruction directed at those exercising First Amendment rights at a house of worship—cannot possibly be categorized as "economic." Section 248(a)(2) lacks both a jurisdictional element and relevant congressional findings. And it regulates quintessentially local, non-economic criminal conduct that has, at best, a highly attenuated connection to interstate commerce.

### i.   Section 248(a)(2) regulates intrastate, non-economic conduct.

The first factor, "whether the regulated activity is economic in nature," weighs heavily against upholding Section 248(a)(2). "[T]hus far in our Nation's history," the Supreme Court has "upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." *Morrison*, 529 U.S. at 613. For Section 248(a)(2), "nothing about the regulated conduct is economic in nature." *Jingrong*, 16 F.4th at 63 (Walker, J., concurring).[5]

In the two seminal decisions analyzing whether an activity substantially affects interstate commerce—*United States v. Lopez* and *United States v. Morrison*—"the

---

[5] Judge Walker's concurrence in *Jingrong* is the only circuit court analysis of whether Section 248(a)(2) is a valid exercise of Congress's commerce power, and it concluded that it was not. Because the majority opinion in *Jingrong* reversed the district court on statutory grounds, it did not address the district court's flawed constitutional holding that the Commerce Clause sustains Section 248(a)(2). *See Jingrong*, 16 F.4th at 62. Judge Walker's concurrence, however, explains the errors of the district court's constitutional analysis in depth.

noneconomic, criminal nature" of the regulated conduct was "central" to the decisions to strike down each respective statute as exceeding Congress's commerce power. *Morrison*, 529 U.S. at 610 (citing *Lopez*, 514 U.S. at 551, 560, 561 & 566). In *Lopez*, the Court struck down the Gun-Free School Zones Act, which prohibited possession of firearms within a certain radius of a school. At the heart of this determination was the fact that the statute regulated local, non-economic conduct that was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez*, 514 U.S. at 561.[6] The Court explained that "[e]ven *Wickard* [*v. Filburn*, 317 U.S. 111 (1942)], which is perhaps the most far reaching example of Commerce Clause authority over intrastate activity, involved economic activity in a way that the possession of a gun in a school zone does not." *Id.* at 560. In striking down the statute, the Court found that Congress's authority could not "be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Id.* at 561.

Five years later, *Morrison* held that the civil remedy for victims of crimes of violence motivated by gender was similarly non-economic and struck that provision from

---

[6] Nor is the intrastate, non-commercial activity targeted by Section 248(a)(2) an "essential part of a larger regulation of economic activity" that could be undercut absent the provision. Unlike the statute at issue in *Gonzales v. Raich*—the Controlled Substances Act—the FACE Act is not a regulatory scheme targeting "quintessentially economic" activities: "the production, distribution, and consumption of commodities." *Gonzales v. Raich*, 545 U.S. 1, 25 (2005) (internal citation and quotation marks omitted). Moreover, even if the FACE Act did constitute such a regulatory scheme, there is no argument that invalidating Section 248(a)(2) would "undermine the orderly enforcement of" the remaining portions of the FACE Act. *Id.* at 28.

7

the Violence Against Women Act ("VAWA"). *Morrison*, 529 U.S. at 613–19. The Court invalidated the law because the regulated conduct, gender-motivated violence, was "not, in any sense of the phrase, economic activity." *Id.* at 613. And the Court criticized petitioners and the dissent for "downplay[ing] the role that the economic nature of the regulated activity plays in our Commerce Clause analysis," a consideration the Court found "central" to its analysis in past cases. *Id.* at 610. *Morrison* reaffirmed that the third *Lopez* category generally applies only where "the activity in question has been some sort of economic endeavor." *Id.* at 611.

Like the statutes at issue in *Lopez* and *Morrison*, Section 248(a)(2) regulates non-economic, intrastate criminal conduct (violence, intimidation, and obstruction) against individuals engaged in a non-commercial activity (religious practices) at a non-commercial location (a house of religious worship). These criminal acts have no connection to the production or sale of commodities or the provision of services, let alone a substantial connection to *interstate* commercial markets.

Section 248(a)(2)'s unique focus on *religious activities* at religious institutions ensures that it regulates only intrastate, non-economic activity. The provision's plain text excludes any secondary function of a house of religious worship that falls outside of engagement in religious practices, because it only prohibits interference with individuals that are engaged in or attempting to engage in "exercise of the First Amendment right of religious freedom." So, while houses of religious worship may have secondary functions with economic or commercial roles, *see United States v. Hari*, 67 F.4th 903, 909 (8th Cir. 2023) (explaining that the premises of houses of worship can be "used for a broad range of

8

educational, recreational, and financial activities"), those functions are not implicated by Section 248(a)(2). The section may prohibit violence against worshippers entering a church for a service, but not against parents dropping off their children at the same church for paid-for daycare.

Ultimately, "[t]he act of worship—separate from whatever commercial endeavors religious organizations may also engage in—is in no sense a commercial or economic activity." *Jingrong*, 16 F.4th at 67 (Walker, J., concurring). Section 248(a)(2) is therefore "a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez*, 514 U.S. at 561.

The Eighth Circuit's decision in *Dinwiddie*, which upheld the reproductive health clinic provisions of the FACE Act, does not extend to Section 248(a)(2)'s regulation of religious activities at houses of worship. *See* 76 F.3d at 921. Whereas *Dinwiddie* concluded that "the provision and receipt of reproductive-health services" is "commercial activity," *id.*, courts have explained that "the regulation of religious obstruction is not inherently economic." *United States v. Roof*, 10 F.4th 314, 383 (4th Cir. 2021). Religious worship, like education, is "not a commercial activity." *Dinwiddie*, 76 F.3d at 921 (describing *Lopez*, 514 U.S. at 565).[7]

---

[7] *Dinwiddie* was also decided before *Morrison*, which, in applying the test from *Lopez*, made it abundantly clear that "the general subject of the statute, not the defendant's individual activity, [must] be economic in nature to justify aggregation." *United States v. Morales-de Jesus*, 372 F.3d 6, 19–20 (1st Cir. 2004).

9

Further, as Judge Walker explains, courts have sustained the reproductive health clinic provisions of the FACE Act "in part based on legislative findings that women, doctors, and medical supplies may travel interstate for reproductive health service." *Jingrong*, 16 F.4th at 66 (Walker, J., concurring). But those findings "were limited to regulating violence at abortion clinics" and "have no bearing on whether violence against worshippers at places of religious worship substantially affects interstate commerce." *Id.*

> ### ii. The absence of a jurisdictional element or congressional findings confines Section 248(a)(2) to intrastate, non-economic conduct.

As Section 248(a)(2) lacks a jurisdictional element and congressional findings, its regulation of non-economic activity finds no support in the second and third factors. A jurisdictional element "ties the substantive offense . . . to one of Congress's constitutional powers (here, its authority over interstate commerce), thus spelling out the warrant for Congress to legislate." *Torres v. Lynch*, 578 U.S. 452, 457 (2016) (citation omitted). In the absence of a jurisdictional element, statutes have "relied instead on congressional findings that the regulated conduct substantially affected interstate commerce." *United States v. McKee*, 68 F.4th 1100, 1106 (8th Cir. 2023). The absence of both is atypical. *See id.* at 1106–07 (finding that a statute's "lack of either a jurisdictional element or congressional findings tying it to interstate commerce means it does *not* look like a typical criminal Commerce Clause statute."). Without congressional findings setting out the basis for its enactment, courts have no guidance on the rationale connecting the regulated activity to interstate commerce. And without a jurisdictional element, Section 248(a)(2) remains

10

open to facial attack and is not susceptible to interpretation "through case-by-case inquiry, that the [crime] in question affects interstate commerce." *Lopez*, 514 U.S. at 561.

The sparse legislative record on the religious worship portions of the FACE Act provides no insight into Section 248(a)(2)'s connection to interstate commerce. Even after it was amended to address religious worship, the Senate version of the FACE Act contained numerous findings—several expressly discussing the reproductive health provisions' connection to interstate commerce, *see Bird*, 124 F.3d at 671 n.2—yet not one finding addressed religious worship. Though those findings were removed from the final statute, the legislative purpose retained in the final statute solely mentions "reproductive health services." Pub. L. No. 103-259. Other parts of the legislative record confirm that Congress did not consider Section 248(a)(2)'s connection to commerce before its enactment.[8] Congress's consideration was limited to highlighting the importance of "the right of churches and synagogues and clergy leaders and parishioners to pray free of violence[.]" 140 Cong. Rec. H3126 (daily ed. May 5, 1994) (statement of Rep. Schumer); *accord* 140 Cong. Rec. S5596 (daily ed. May 12, 1994) (statement of Sen. Kennedy) (explaining that the FACE Act provides "appropriate new Federal protection for religious freedom at places of worship."). Instead of showing a connection to commerce or even economic activity,

---

[8] The addition of the religious worship provisions has been described as an amendment proposed by Senator Orrin Hatch "to try to complicate passage." Ed Whelan, *FACE Act and Places of Religious Worship*, Nat'l Rev. (Feb. 7, 2023), https://www.nationalreview.com/bench-memos/face-act-and-places-of-religious-worship/. One Congressman called it "an effort to underscore the arbitrary nature of this legislation," added "in the hopes that the bill's supporters would see the problem with their proposal." 140 Cong. Rec. H3117 (daily ed. May 5, 1994) (statement of Rep. Goss).

the legislative record merely reiterates that Section 248(a)(2) regulates purely intrastate, non-economic conduct. "[I]t is telling here that Congress made specific interstate commerce findings as to abortion clinics but not to places of religious worship." *Jingrong*, 16 F.4th at 66 (Walker, J., concurring).

Section 248(a)(2)'s lack of a jurisdictional element, which is "perhaps the most important factor" under the *Lopez* analysis, *Hari*, 67 F.4th at 909 (citing *Roof*, 10 F.4th at 383), further undercuts any argument that it constitutes a permissible exercise of commerce power. Congress's omission of a jurisdictional element from Section 248(a)(2) is especially stark next to its sister statute, 18 U.S.C. § 247. Like Section 248(a)(2), Section 247 enshrines protections for the free exercise of religion from obstruction or force, but focuses that protection on religious property. After the Supreme Court decided *Lopez*, Congress amended Section 247 through the Church Arson Prevention Act ("CAPA") to add a jurisdictional element, requiring that "the offense is in or affects interstate or foreign commerce." H.R. Rep. No. 104-621, at 7 (1996).

Since that amendment, CAPA's jurisdictional element has saved Section 247 from invalidation. *See, e.g.*, *Roof*, 10 F.4th at 383 ("We agree with the government" that the statute's jurisdictional element "saves it from facial invalidity."); *United States v. Hari*, 2019 WL 7838282, at *4 (D. Minn. Sept. 17, 2019), *adopted*, 2019 WL 6975425 (D. Minn. Dec. 20, 2019) ("The Court agrees that attacks on churches are not a type of economic activity. However, as the Government contends, the jurisdictional element of § 247 restricts the statute's reach to conduct that is sufficiently related to interstate commerce.") (internal citation and quotation marks omitted); *United States v. Bowers*, 495

12

F. Supp. 3d 362, 372 (W.D. Pa. 2020) ("[A]lthough the activity regulated by § 247 may not be inherently economic in nature, the statute does contain an express jurisdictional element and Congress discussed such findings on the floor regarding the effects of the proscribed activity.").   Other statutes regulating intrastate criminal acts or those affecting religious activities or institutions have similarly been saved by jurisdictional elements.  *See, e.g.*, *United States v. Hill*, 927 F.3d 188, 205–06 (4th Cir. 2019) (explaining that "The Hobbs Act and the federal arson statute [18 U.S.C. § 844(i)] comply with the Commerce Clause . . . *not* because robbery and arson are 'inherently economic,' but rather because those statutes contain jurisdictional elements[.]") (citation omitted).

Congress had the opportunity to amend the FACE Act, as it did with CAPA, to provide congressional findings and a jurisdictional element.  It did not do so.  Section 248(a)(2)'s regulation of purely intrastate, criminal conduct affecting only non-commercial activity is beyond Congress's commerce power.

### iii.     Any relationship to interstate commerce is highly attenuated.

The fourth factor delivers the final blow to Section 248(a)(2)'s constitutionality under the Commerce Clause.  Any nexus between Section 248(a)(2) and interstate commerce would be impermissibly attenuated.  Section 248(a)(2)'s regulation of violence, threats, and obstruction targeting religious exercise at houses of worship is quintessentially local, non-economic criminal activity.  Connecting it to commerce would require this Court "to pile inference upon inference" and destroy the "distinction between what is truly national and what is truly local." *Lopez*, 514 U.S. at 567–68.

13

Both *Lopez* and *Morrison* rejected analyses that implicate a but-for causal chain leading from a criminal act to a high-level impact on interstate commerce. In *Lopez*, the Court rejected the argument that "the threat of firearm possession in and near schools poses to the educational process" creates sufficient downstream interstate "economic consequences." 514 U.S. at 565. Similarly, in *Morrison*, the Court dismissed as "unworkable" the reasoning that gender-motivated violence deterred victims from traveling interstate, engaging in interstate business, "decreas[ed] the supply of and the demand for interstate products," "diminish[ed] national productivity," and increased "medical and other costs." *Morrison*, 529 U.S. at 615. In the *Morrison* Court's eyes, this logic sought "to follow the but-for causal chain from the initial occurrence of violent crime (the suppression of which has always been the prime object of the States' police power) to every attenuated effect upon interstate commerce." *Id.*

The only path to interstate commerce from the conduct regulated by Section 248(a)(2) requires the same winding chain of inferences that *Lopez* and *Morrison* reject. To connect violence, intimidation, or obstruction of religious worshippers to interstate commerce, the Court would have to assume that: first, violence and obstruction against individual worshippers, in aggregate, measurably depresses religious attendance at or donations to houses of worship; second, that depressed attendance in turn diminishes those institutions' incidental commercial activities, such as purchases at their gift shops; and third, that this diminution, in aggregate, produces an effect on interstate commerce substantial enough to bring private criminal conduct within Congress's reach. This logic requires the precise chain of inferences that the Court rejected in *Morrison*. It would reach

14

any crime, no matter how petty or local, so long as it might reduce some entity's even minor participation in interstate commerce. And Congress would gain unbounded access to regulation of local crimes because of their mere impact on religion. Given that the suppression of crime "has always been the prime object of the States' police power," this nexus is too attenuated for Congress's commerce power. *Morrison*, 529 U.S. at 615.

Because Section 248(a)(2) does not fit within any of the three *Lopez* categories, it fails to meet any of the bases for regulation under the Commerce Clause. Without the support of Section 5 of the Fourteenth Amendment, it is invalid and unconstitutional.

**B.      Absent a State Action Requirement, Section 248(a)(2) Cannot Be Grounded in Section 5 of the Fourteenth Amendment.**

In enacting the FACE Act, Congress also identified a second source of authority, Section 5 of the Fourteenth Amendment. Section 5 cannot sustain Section 248(a)(2) either, however, unless the provision is read to require state action. Section 5 permits Congress to "enforce by appropriate legislation the constitutional guarantee that no State shall deprive any person of life, liberty, or property, without due process of law, nor deny any person equal protection of the laws." *Morrison*, 529 U.S. at 619 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 517 (1997) (internal quotation marks omitted)). But that Section 5 authority comes with a key limitation: Congress can only enact legislation that remedies or deters *state action*. *See Civil Rights Cases*, 109 U.S. 3, 17–18 (1883). Section 248(a)(2) is therefore unconstitutional unless it is read to apply solely to state action. And given that the superseding indictment fails to allege state action, the Section 248(a)(2) charges against Mr. Lemon must be dismissed under any reading of the statute.

15

For over a century, the Supreme Court has consistently held that Section 5 cannot sustain legislation targeting purely private conduct. The seminal decision setting out this limitation, the *Civil Rights Cases*, invalidated sections of the Civil Rights Act of 1875 because sections that criminalized the denial of public accommodations and conveyances regulated private conduct. 109 U.S. at 17. The same issue arose in *Morrison*, where the Court held that the relevant sections of VAWA could not be rooted in Section 5 because those sections were "directed not at any State or state actor, but at individuals who have committed criminal acts motivated by gender bias." 529 U.S. at 626. Therefore, if Section 248(a)(2) applies to the purely private conduct alleged in the superseding indictment, it cannot be sustained under Section 5 of the Fourteenth Amendment and must be invalidated.

The only way to uphold the constitutionality of Section 248(a)(2) would be by reading it to contain a state action requirement. For example, if Section 248(a)(2)'s protection of persons "exercising the First Amendment right to religious worship" were interpreted as merely co-extensive with the First Amendment, which "prohibit[s] only state action," *Hoekman v. Educ. Minnesota*, 41 F.4th 969, 977 (8th Cir. 2022), Section 248(a)(2) could be sustained under Section 5 of the Fourteenth Amendment. But under that reading of Section 248(a)(2), the provision would not apply to Mr. Lemon's conduct. The superseding indictment does not allege—nor could it allege—that Mr. Lemon's conduct involved state action. Consequently, Section 248(a)(2) is either unconstitutional or inapplicable.

The charge against Mr. Lemon in Count II of the superseding indictment is plainly invalid. Section 248(a)(2) is not authorized by the Commerce Clause, and if it regulates

16

purely private conduct, it cannot be sustained by Section 5 of the Fourteenth Amendment.

If Section 248(a)(2) is limited to state action, it remains constitutional, but the government

has failed to allege this essential element.  This Court should dismiss Count II.

## II.    THE SECTION 241 CHARGE LACKS A VALID FEDERAL RIGHT.

Count I of the superseding indictment charges Mr. Lemon with a violation of Section

241.  It fails alongside Count II.  As relevant to the charge against Mr. Lemon, Section 241

prohibits:

> [T]wo or more persons conspir[ing] to injure, oppress, threaten, or intimidate any person … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same[.]

18 U.S.C. § 241.

Unlike most conspiracy statutes, Section 241 "prohibits interference with rights

established by the Federal Constitution or laws and by decisions interpreting them." *United*

*States v. Kozminski*, 487 U.S. 931, 941 (1988).  "[I]n lieu of describing the specific conduct

it forbids, [Section 241]'s general terms incorporate constitutional law by reference."

*United States v. Lanier*, 520 U.S. 259, 265 (1997).  The superseding indictment names "the

exercise of the First Amendment right of religious freedom at a place of religious worship,

as secured by Title 18, United States Code, Section 248(c)" as the predicate federal right

for the Section 241 charge against Mr. Lemon.  ECF 144 ¶ 6.

Section 248(c) is not a viable "federal right" for enforcement through Section 241.

Section 248(c) incorporates Section 248(a)(2), and for the reasons set forth above, pp. 2-16,

Section 248(a)(2) is either unconstitutional or contains a state action requirement that

17

renders it inapplicable to the conduct alleged in the superseding indictment. A Section 241 charge cannot rely on an invalid or inapplicable statute as its predicate federal right.

Nor can the First Amendment serve as the basis for the Section 241 charge. As explained, the First Amendment "prohibit[s] only state action." *Hoekman*, 41 F.4th at 977.[9] It is "undisputed" that "a private entity acting on its own cannot deprive a citizen of First Amendment rights." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (internal citation and quotation marks omitted).

In *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 830 (1983), the Supreme Court considered the viability of relying on the First Amendment as the source of the predicate right for a claim involving Section 241's civil analogue, 42 U.S.C. § 1985(3). It reasoned that because Section 1985(3) vindicates only preexisting federal rights, and because the First Amendment "restrains only official conduct," the plaintiffs needed "to prove that the state was somehow involved in or affected by the conspiracy." *Id.* at 833. The Court concluded that an "alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *Id.* at 830. And the Supreme Court subsequently clarified that even where the aim of the conspiracy is to influence the activity of the state, Section 1985(3) is inapplicable unless the private conspiracy is aimed at rights—unlike the First Amendment—that are constitutionally protected against private, as well as official encroachment. *See Bray v. Alexandria*

---

[9] If Section 248(a)(2) lacks a state action requirement, it would be unconstitutional and thus could not be the source of a federal right.

18

*Women's Health Clinic*, 506 U.S. 263, 283 (1993). "*Bray* explicitly held § 1985(3) is not applicable to private conspiracies that aim at rights that by definition only shield against State interference. It is therefore irrelevant whether the aim of the private conspiracy was to influence State activity." *Tilton v. Richardson*, 6 F.3d 683, 687 (10th Cir. 1993).

*Carpenters*' conclusions apply equally to claims brought under Section 241. Section 241 is Section 1985(3)'s "criminal counterpart," *Bray*, 506 U.S. at 275, and courts frequently use the two interchangeably to assess their common requirement of an underlying federal right. In addition, courts have applied similar reasoning to other constitutional rights requiring state action. *See, e.g.*, *United States v. Price*, 383 U.S. 787, 799 (1966) (Fourteenth Amendment); *United States v. Guest*, 383 U.S. 745, 755 (1966) (same).

So too here. The superseding indictment does not plead a single instance of participation by the state or federal government in the charged conspiracy. The alleged conspiracy occurs between purely private actors and thus fails to fulfill the First Amendment's state action requirement. Without either Section 248(c) or the First Amendment, Count I lacks a valid, applicable federal right, and must be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Lemon respectfully requests that this Court dismiss Counts I & II.

Dated: August 7, 2026                    Respectfully submitted,

/s/ *Joseph H. Thompson*                  By: */s/ Abbe David Lowell*
Joseph H. Thompson (#0343031)          Abbe David Lowell (*admitted pro hac vice*)

THOMPSON JACOBS PLLC
220 N. Second Street, Suite 220
Minneapolis, MN 55401
Tel: (612) 416-3322
joe@thompsonjacobs.com

David A. Kolansky (*admitted pro hac vice*)
Isabella M. Oishi (*admitted pro hac vice*)
LOWELL & ASSOCIATES, PLLC
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

*Counsel for Don R. Lemon*